STATE of NORTH CAROLINA and North Carolina Utilities Commission, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent, South Jersey Gas Company, Public Service Electric & Gas Company, Transcontinental Gas Pipe Line Corporation, Brooklyn Union Gas Company, Public Service Commission of the State of New York, City of Danville, Virginia, Long Island Lighting Company, CF Industries, Inc. & Farmers Chemical Association, Inc., Philadelphia Gas Works, Eastern Shore Natural Gas Company, Public Service Company of the State of North Carolina, Inc. and North Carolina Gas Corporation, Piedmont Natural Gas Company, Inc., General Motors Corporation, Washington Gas Light Company, Commonwealth Gas Pipeline Corporation, Elizabethtown Gas Company, Philadelphia Electric Company, Intervenors.

No. 81–1225.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1983.

Decided March 20, 1984.

---

Morton L. Simons, Washington, D.C., with whom Barbara M. Simons, Washington, D.C., was on the brief for petitioners.

Joel Cockrell, Attorney, Federal Energy Regulatory Commission, Washington, D.C., with whom Charles A. Moore, General Counsel and Jerome M. Feit, Sol., Federal Energy Regulatory Commission, Washington, D.C., were on the brief for respondent. Auburn L. Mitchell and Jerome Nelson, Attorneys, Federal Energy Regulatory Commission, Washington, D.C., also entered appearances for respondent.

Richard A. Solomon, Washington, D.C., for intervenor, The Public Service Commission of the State of New York. Peter H. Schiff also entered an appearance for Public Service Commission of the State of New York.

Robert C. Richards, Mineola, N.Y., was on the brief for intervenor, Long Island Lighting Company.

James R. Lacey, Newark, N.J., was on the brief for intervenor, Public Service Electric and Gas Company.

Joseph P. Stevens, Alvin Adelman and M. Margaret Fabic, Brooklyn, N.Y., for The Brooklyn Union Gas Company and Lewis Carroll and Gordon M. Grant for Washington Gas Light Company were on the joint brief for intervenors.

Thomas F. Ryan, Jr. and Robert G. Hardy, Washington, D.C., were on the brief for intervenor, Transcontinental Gas Pipe Line Corporation.

Joseph R. Davison, Philadelphia, Pa., was on the brief for intervenor, Philadelphia Gas Works.

Joseph M. Oliver, Jr., Washington, D.C., entered an appearance for intervenor, South Jersey Gas Company.

Stephen A. Herman, Newark, N.J., entered an appearance for intervenors, CF Industries, Inc., et al.

Northcutt Ely and Frederick H. Ritts, Washington, D.C., entered appearances for intervenor, City of Danville, Virginia.

Stephen H. Watts, II, Richmond, Va., entered an appearance for intervenor, Commonwealth Gas Pipeline Corporation.

John T. Miller, Jr., Washington, D.C., entered an appearance for intervenor, Elizabethtown Gas Company.

Herbert J. Martin, Washington, D.C., entered an appearance for intervenor, Eastern Shore Natural Gas Company.

Gregory Grady and Barbara J. Klein, Washington, D.C., entered appearances for intervenor, Public Service Company of North Carolina, Inc., et al.

Edward J. Grenier, Jr., Richard P. Noland, Richard A. Oliver, Washington, D.C., and Julius Jay Hollis, Detroit, Mich., entered appearances for intervenor, General Motors Corporation.

Eugene J. Bradley, Philadelphia, Pa., entered an appearance for intervenor, Philadelphia Electric Company.

Before EDWARDS and SCALIA, Circuit Judges, and WILLIAMS,[*] Senior District Judge for the United States District Court for the Central District of California.

SCALIA, Circuit Judge:

The State of North Carolina and the North Carolina Utilities Commission petition under 15 U.S.C. § 717r(b) (1982) for review of a Federal Energy Regulatory Commission order determining whether customers of the Transcontinental Gas Pipe Line Corporation are entitled to be paid compensation in conjunction with a series of curtailment plans reducing their allocations of natural gas.

I

During 1970, natural gas shortages developed on a number of pipeline systems in the United States. In April 1971, the Commission[1] ordered every federally regulated pipeline that anticipated it might have to curtail deliveries to file a curtailment plan explaining how it would allocate available gas. That plan, if approved, would define the pipeline's obligations and supersede its contracts with its customers. *Policy with Respect to Establishment of Measures,*

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. Until 1977, the Federal Power Commission was the federal agency in charge of regulation of natural gas. Its functions in that regard were transferred to the Federal Energy Regulatory Commission on August 4, 1977. Department of Energy Organization Act, Pub.L. No. 95-91, 91 Stat. 565 (codified at 42 U.S.C. § 7101 *et seq.*) (Supp. V 1981). This opinion refers to both agencies as "the Commission."

*etc.,* Docket No. R–418, Order No. 431, Statement of General Policy, 45 F.P.C. 570 (1971).

## A. Transco's Curtailment Plans

Transcontinental Gas Pipe Line Corporation ("Transco") is one of the major pipeline systems in the United States. In 1971 it experienced gas supply shortages and began curtailment of service, which lasted until May 15, 1980. During that period, Transco has had a variety of curtailment plans. This lawsuit focuses on three of them.

Until November 1973, Transco performed its curtailment on the basis of interim plans which reduced supplies on a pro rata basis according to the volume of each customer's contractual entitlements. The pipeline and customers agreed to these plans and the Commission approved settlements implementing them. *Transcontinental Gas Pipe Line Corp.,* Docket No. RP71–118, Order Conditionally Approving Interim Settlement Agreement, 46 F.P.C. 1212 (1971); *Transcontinental Gas Pipe Line Corp.,* Docket No. RP72–99, Order Approving Interim Settlement Agreement, 48 F.P.C. 1060 (1972). No review of these plans was ever sought, and they are not before us in this suit.

In January 1973, Transco submitted a new plan, which differed in its basic approach. Instead of curtailing all customers on a pro rata basis, it set up priorities among the "end uses" to which the ultimate consumers put natural gas, and curtailed customers with low-priority end uses much more than those with high-priority ones. The highest priority was assigned to residential use, and successively lower priorities to large commercial and certain other uses and various categories of industrial uses.[2] The Commission permitted the plan to go into effect on an interim basis in November 1973. *Transcontinental Gas*

*Pipe Line Corp.,* Docket No. RP72–99, Order Denying Motion for Reconsideration, etc., 50 F.P.C. 281 (1973). This court, however, stayed the Commission's action and directed continuation of the previous interim plan until further order of the court. *Consolidated Edison Co. of New York v. FPC,* No. 73–1999 (D.C.Cir. Nov. 9, 1973; Dec. 14, 1973) (Orders). No issues arising out of that litigation are raised in this suit.

In 1974, Transco submitted a new interim settlement plan ("Transco I") for the period November 1974–November 1975. That plan, the first of those directly relevant to this suit, allocated gas 50% on the basis of pro rata contractual entitlement and 50% on the basis of end use. It also required that customers curtailed the least pay compensation to those curtailed the most. As described below, that plan became embroiled in procedural and substantive challenges before the Commission, this court, and the Supreme Court.

The Commission, which was still under order to continue the 1972 pro rata plan until further word from this court, had asked us for clarification as to what action that order would permit with regard to an interim plan for the 1974–75 contract season. We ruled that the Commission could either maintain in effect the existing interim plan or implement a new one proposed by Transco. *Consolidated Edison Co. v. FPC,* No. 73–1999, (D.C.Cir. Oct. 4, 1974) (Order). On November 12, 1974, however, the Commission rejected the Transco I plan because, among other reasons, it believed the compensation requirement exceeded the Commission's powers. *Transcontinental Gas Pipe Line Corp.,* Docket No. RP72–99, Order Finding an Emergency, etc., 52 F.P.C. 1288 (1974). Transco and some of its customers petitioned this court to review the Commission's decision. We entered an interim order pending our final

---

**2.** These priorities were derived from a series of Commission orders stating that the Commission's policy favored curtailment of sales on the basis of end uses rather than percentage of contract entitlements, and establishing a ranking of uses. *Utilization and Conservation of*

*Natural Resources,* Docket No. R–469, Order No. 467, 49 F.P.C. 85 (1973); Order No. 467–A, 49 F.P.C. 217 (1973); Order No. 467–B, 49 F.P.C. 583 (1973); Order No. 467–C, 51 F.P.C. 1199 (1974).

review, directing the Commission to place in effect the Transco I plan, with the exception of the compensation scheme, monies for which we instructed the potential payors to deposit in an escrow account pending judicial determination of its legality. *Consolidated Edison Co. v. FPC,* 511 F.2d 372 (D.C.Cir.1974).

The Commission's order rejecting Transco I was still before this court for final review. At that juncture, we became concerned that the entire curtailment plan might be illegal because no genuine natural gas shortage existed. We therefore entered an interlocutory order directing the parties to submit information concerning Transco's reserves. After receiving responses and noting that the Commission refused to certify the accuracy of Transco's submissions, we ordered the Commission to conduct an investigation of the matter within thirty days, and deferred review of the Commission's order until that was completed. The Supreme Court granted the Commission's petition for certiorari and held that our order was a usurpation of a Commission function, and beyond the bounds of our authority. It directed us to remand to the agency if we required further information, or to proceed with our review if we did not. *FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976). Accordingly, we remanded the record to the Commission for further findings of fact regarding the existence of a shortage, but retained jurisdiction over the controversy. *Transcontinental Gas Pipe Line Corp. v. FPC,* No. 74–2036 (D.C.Cir. Feb. 6, 1976) (Order). The Commission conducted an investigation, made further findings, and returned the record to us. We found the information inadequate and remanded the record again. *Transcontinental Gas Pipe Line Corp. v. FPC,* 562 F.2d 664 (D.C.Cir. 1976), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978).

Following this second remand of the record, the Commission directed an Administrative Law Judge to prepare a report to the Commission on the shortage. *Examination in Response to Court Ordered Remand, etc.,* Docket No. TC79–6, Order Providing for Investigation, Requiring Report, & Establishing Procedures, 6 FERC (CCH) ¶ 61,140 (1979).[3] It also moved this court to remand the entire controversy in order that the Commission might reexamine the Transco I plan in light of our decision in *Elizabethtown Gas Co. v. FERC,* 575 F.2d 885 (D.C.Cir.1978), which had held that the Commission had authority to allow compensation as part of a curtailment plan. We granted the motion. *Transcontinental Gas Pipe Line Corp. v. FERC,* No. 74–2036 (D.C.Cir. Apr. 18, 1979) (Order).

Meanwhile, while the status of the interim Transco I plans was being litigated, Transco proposed a permanent curtailment plan ("Transco II"). That plan based allocations entirely on end use, classifying Transco's distribution company customers' end uses on the basis of their 1972–73 sales profiles. The plan also contained a compensation feature whereby customers curtailed less than the system average would compensate those curtailed more than the system average. Some of Transco's customers supported the plan, and some opposed it. The Commission approved the allocations proposed in the plan, but reserved judgment on the compensation issue in light of the pending Transco I proceedings and because it believed the evidentiary record was insufficient to determine whether compensation was proper. It directed that the Transco II allocations be placed in effect as of November 1, 1976. *Transcontinental Gas Pipe Line Corp.,* Docket No. RP72–99, Opinion No. 778, 56 F.P.C. 2134 (1976). On rehearing it rejected the compensation arrangements proposed during the hearing and determined that the remedy of proponents of compensation was to initiate a complaint proceeding challenging the absence of a compensation procedure in

**3.** That report ultimately concluded that the shortage had been genuine. *Examination in Response to Court Ordered Remand, etc.,* Docket No. TC79–6, Report to the Commission, 8 FERC (CCH) ¶ 63,035 (1979).

the Transco II plan. *Transcontinental Gas Pipe Line Corp.*, Docket No. RP72–99, Opinion No. 778–A, 56 F.P.C. 3470 (1976).

We set aside that action, holding that the allocations were discriminatory and unlawful because the end-use determinations underlying them were based on outdated information and because the Commission did not take into account customers' different abilities to obtain natural gas from other suppliers. We also held that the Commission's failure to consider inclusion of a compensation scheme was improper. We nonetheless allowed the Transco II allocations to remain in effect for a reasonable period during which the Commission could consider the remanded issues. *North Carolina v. FERC*, 584 F.2d 1003 (D.C.Cir.1978).

After the remand, Transco and its customers reached a settlement with respect to allocations in a permanent curtailment plan ("Transco III"). That plan was approved by the Commission in January 1979 and made effective as of November 1, 1978. *Transcontinental Gas Pipe Line Corp.*, Docket No. RP72–99, Order Approving and Adopting Settlement, 6 FERC (CCH) ¶ 61,050 (1979). The settlement did not resolve any compensation issues, either in connection with past (Transco I and II) plans or in connection with the final Transco III plan.

## B. Compensation

On August 4, 1980, the Commission issued Order No. 1, *Transcontinental Gas Pipe Line Corp.*, Docket Nos. RP72–99 & TC79–6, 12 FERC (CCH) ¶ 61,130 (1980) (Order on Compensation), its first attempt to resolve the compensation issue. That order accepted the compensation scheme proposed in Transco I, governing the 1974–75 period, and rejected any compensation for Transco II and III. Various parties filed petitions for rehearing. The Commission granted these in Order No. 2, *Transcontinental Gas Pipe Line Corp.*, Docket Nos. RP72–99 & TC79–6 (Dec. 8, 1980) (Order Granting Rehearing & Setting Compensation Issue for Hearing), and set an evidentiary hearing on the appropriateness of compensation for all of the plans. Several

parties objected to that disposition and requested rehearing of Order No. 2. Two believed that the Commission's reasons for granting compensation for Transco I were improper, one that compensation funds for Transco I currently in escrow should have been immediately disbursed, and two that the Commission should have provided for a separate hearing and decision in Transco I. The Commission denied all petitions in Order No. 3, *Transcontinental Gas Pipe Line Corp.*, Docket Nos. RP72–99 & TC79–6, 14 FERC (CCH) ¶ 61,112 (1981) (Order Denying Rehearing & Clarifying Prior Order).

The evidentiary hearing was then held. There Transco proposed a settlement virtually identical to the Commission's resolution in Order No. 1, whereby compensation would be approved for Transco I and rejected for Transco II and III. All parties except petitioners supported the proposal. In Order No. 4, *Transcontinental Gas Pipe Line Corp.*, Docket Nos. RP72–99 & TC79–6, 17 FERC (CCH) ¶ 61,275 (1981) (Order Approving Settlement), the Commission approved the proposal, and in Order No. 5, *Transcontinental Gas Pipe Line Corp.*, Docket Nos. RP72–99 & TC79–6, 18 FERC (CCH) ¶ 61,174 (1982) (Order Clarifying Order Approving Settlement) denied rehearing.

Petitioners challenge the Commission's denial of compensation for Transco II and III on substantive and procedural grounds. Neither they nor any other party specifically challenges the Commission's grant of compensation for Transco I.

## II

■ We find that we cannot grant the relief petitioners have requested—that we reverse the Commission's disposition as to Transco II and III while leaving it in place as to Transco I—because the Commission's order was a unitary one and cannot be severed in that fashion.

■ Whether an administrative agency's order or regulation is severable, permitting a court to affirm it in part and reverse it in

part, depends on the issuing agency's intent. Where there is substantial doubt that the agency would have adopted the same disposition regarding the unchallenged portion if the challenged portion were subtracted, partial affirmance is improper. *See FPC v. Idaho Power Co.*, 344 U.S. 17, 20–21, 73 S.Ct. 85, 86–87, 97 L.Ed. 15 (1952); *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618–19, 64 S.Ct. 1215, 1221–1222, 88 L.Ed. 1488 (1944).

Here the very language used by the Commission in entering its order regarding Transco I creates that substantial doubt. In Order No. 4, the order finally disposing of the compensation issue, the Commission stated explicitly:

> We note that this disposition of Transco I is taken only in conjunction with approval of the overall settlement. We are not at all sure that we would order compensation for Transco I apart from the agreement of the parties to this comprehensive settlement.

17 FERC (CCH) ¶ 61,275, at 61,546 n. 5. Likewise, in Order No. 5, the order clarifying Order No. 4 and denying rehearing, the Commission explained:

> Our primary reason for approval of compensation for Transco I and denial for Transco II and III is that this result is a comprehensive settlement which, as a package, appears reasonable.
>
> Focusing within the package on the Transco I period, a decision treating Transco I compensation as a separate matter would have been difficult without the compromise and withdrawal of opposition by Philadelphia Gas Works (which now will be paying substantial Transco I compensation). Philadelphia Gas Works changed positions only on the basis that compensation for all three periods be decided simultaneously. Thus, Transco I compensation has been approved only because it is part of an overall settlement.
>
> As to Transco II and III, denial of compensation for these periods is based, first of all, upon our evaluation that the trade-off of compensation for Transco I

against denial for subsequent periods is reasonable.

18 FERC (CCH) ¶ 61,174, at 61,346 (footnotes omitted). Finally, in that same order, in a footnote, the Commission stated:

> [O]ur position is that the decision in favor of Transco I compensation is not severable from the treatment of Transco II and III in the December 30 order.

*Id.* at 61,346 n. 3.

■ Petitioners contend that the Natural Gas Act's judicial review provision, under which we are proceeding here, permits us to sever the order regardless of the Commission's intentions on the point. That provision states that "[the] court shall have jurisdiction ... to affirm, modify, or set aside such order in whole *or in part.*" 15 U.S.C. 717r(b) (emphasis added). But the Supreme Court said of the identical language in § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l* (b) (1982), "that authority is not power to exercise an essentially administrative function," *FPC v. Idaho Power Co., supra*, 344 U.S. at 21, 73 S.Ct. at 87, and for that reason held that a reviewing court had exceeded its authority in modifying the FPC's conditional grant of a license by striking the condition. *Id.* at 20–21, 73 S.Ct. at 86–87. Similarly, we have no power to modify the Commission's order here by transforming its grant of compensation for Transco I, expressly conditioned on there being no compensation for Transco II and III, into an absolute one.

■ Petitioners point out that nobody has challenged the Commission's order as it pertains to Transco I. To begin with, that is irrelevant. Other parties have challenged our authority to approve the disposition of Transco I *in isolation*—which is what the severability issue concerns. It is not really Transco I that has gone unchallenged, in other words, but Transco I–III. Moreover, even if no party had raised the severability issue, we would have had a duty to consider it on our own motion, since it is jurisdictional. *See FPC v. Idaho Power Co., supra*, 344 U.S. at 20–21, 73 S.Ct. at 86–87.

Petitioners assert that because the compensation in Transco I will be paid from an escrow fund established by an order of this court, rather than by an action of the Commission, our power with respect to the matter is plenary, not appellate. That is (or was) undoubtedly so in one sense: When we ordered establishment of the fund "pending a determination of the [compensation] procedure's legality," *Consolidated Edison Co. v. FPC, supra,* 511 F.2d at 381, we unquestionably had in mind a dispositive determination by this court. What that determination would govern, however, was whether the money in the fund would have to be returned to the original contributors or rather *could* be distributed among highly curtailed customers. We never envisioned that it would govern whether such a distribution *should* occur or, if so, what the distribution formula should be. Those issues had not yet been considered by the Commission, since it believed it lacked authority to require any compensation whatever. If we, after finding such authority to exist, were to proceed to implement it ourselves, we would be "exercis[ing] an essentially administrative function." *FPC v. Idaho Power Co., supra,* 344 U.S. at 21, 73 S.Ct. at 87. *See Elizabethtown Gas Co. v. FERC, supra,* 575 F.2d at 889 & n. 3. All of our actions with regard to the fund have been consonant with this view that our limited role was to decide whether the Commission *could* distribute the fund and not (initially at least) whether and how it *should* do so. Once *Elizabethtown* had been decided, and our "determination of the procedure's legality" had thereby been made, we remanded Transco I without retaining any special jurisdiction over the escrow fund or in any way indicating that we viewed its disposition as subject to our initial determination. *Transcontinental Gas Pipe Line Corp. v. FERC,* No. 74–2036 (D.C.Cir. Apr. 18, 1979) (Order). When in response to Commission Orders Nos. 1 and 2 these petitioners asked us to order partial distribution of the escrow money ourselves, we refused, and specifically left it to the Commission to reach a final determination concerning the appropriate distribution of the fund. *North Carolina v. FERC,* No. 81–1225 (D.C.Cir. June 22, 1981) (Order).

■ Petitioners point out that the Commission itself has severed settlements proposed by parties as unseverable, approved the uncontested provisions, and remanded the contested segments for further evidentiary hearings. Here again petitioners fail to understand the difference between the Commission's authority in these matters and our own. The Commission has the power to enter its own orders regarding curtailment. 15 U.S.C. §§ 717 *et seq.* (1982); 42 U.S.C. § 7172(a)(1)(E) (Supp. V 1981). If it wishes to use proposals of the parties as starting points and modify them, it can certainly do so, so long as the final orders satisfy the requirements of law. *See Mobil Oil Corp. v. FPC,* 417 U.S. 283, 312–14, 94 S.Ct. 2328, 2347–2348, 88 L.Ed. 1488 (1974). We do not have the power to enter our own orders, and our authority to modify the Commission's is limited as described above. What the Commission can do in exercising its primary jurisdiction furnishes no guidance for what we may do in exercising our appellate jurisdiction.

Petitioners argue that the Commission's order on compensation was based on Transco's offer of settlement, which in turn was based on the Commission's earlier August 1980 order, which did not purport to make treatment of Transco I dependent on treatment of Transco II and III. In the first place, there is substantial doubt whether even in the original order the two questions were severable. The Commission stated there that

because of the unique circumstances attending Transco I, it is our judgment that the public interest would best be served by our approval of this settlement. *Concomitantly,* we will reject compensation for periods subsequent to 1975.

Order No. 1, *supra,* 12 FERC (CCH) ¶ 61,130, at 61,333 (emphasis added). While the Commission did not stress unseverability as it did in its later opinions, it did at least indicate that it viewed the disposi-

tions as linked. In the second place, upon deciding to grant rehearing of its order, the Commission became free to change its mind about severability as about anything else. *See Kansas Cities v. FERC*, 723 F.2d 82, 89–90 (D.C.Cir.1983). Since the decision to make clear that it was treating the two questions as unseverable resulted in the withdrawal of one of the parties' opposition, Order No. 5, *supra*, 18 FERC (CCH) ¶ 61,174, at 61,346, and since the almost unanimous agreement of the parties was one of the reasons the Commission gave for its order, Order No. 4, *supra*, 17 FERC (CCH) ¶ 61,275, at 61,545, 61,546 n. 5, there is every reason to believe that even if the original order did not intend disposition of Transco I to be unseverable from that of Transco II and III, the Commission not only changed its mind but considered the change important.

Finally, petitioners point to an order of this court entered in response to a motion by the Commission for reconsideration or clarification of the order we entered on June 22, 1981, instructing the Commission to reach a final decision on the Transco I escrow fund. The Commission contended that the June 22 order was in conflict with our decision in *North Carolina v. FERC*, *supra*. We held that there was no conflict, and that the Commission "should now proceed expeditiously to rule on the validity of compensation for the Transco I period, an issue which is severable from the desirability of compensation as part of a permanent curtailment plan." *North Carolina v. FERC*, No. 81–1225 (D.C.Cir. Aug. 18, 1981) (Order). This is playing with words. To say that the *issue* of compensation under Transco I is severable from the issue of compensation under Transco II and III is

not to say that the Commission's ultimate *disposition* of that issue with regard to the one is severable from its disposition with regard to the others. The former is true; the latter is not. And it is the latter that is at issue here.

## III

Petitioners have essentially asked us to let them have their cake (*i.e.*, permit them to retain the award of compensation which the Commission granted for Transco I) and eat it too (*i.e.*, compel an award of compensation for Transco II and III, which the Commission denied). Having found that the nature of the law, like the laws of nature, does not permit that, it remains for us to determine what our disposition of the petition should be.

We could proceed to examine the merits of the petition—treating it as, what it must be, an attack not merely upon Transco II and III but upon Transco I–III—and, if we find it valid, provide some alternate relief that petitioners have not requested. *See* Fed.R.Civ.P. 54(c). That is appropriate enough where we can be sure of providing the petitioners alternate *relief*—that is, some remedy which does them more good than harm. Here, however, the only relief we can legally grant is a remand permitting petitioners to seek from the Commission compensation for Transco II and III, but at the expense of rearguing the compensation already awarded for Transco I. It is, to say the least, not clear that this is to the petitioners' benefit. Not only did they not seek it, but they displayed an evident lack of enthusiasm for it at oral argument.[4]

The situation we confront is analogous to that presented where one party to a con-

---

**4.** The following colloquy took place:

COURT: ... Now suppose that that's the only course that I think is available. You either have it the way it is now or you have no settlement at all, not even on Part I. What would you want us to do?

. . . . .

MR. SIMONS: If you can't be persuaded, then—and I hate to give you an "it depends" answer but I'm afraid that may be the best I can do—if we're simply going to be remanded for another four or five years of wandering in

the wilderness then I would say it would be better to affirm. We do not need that. I would assume that even if you reach that conclusion—which as I say I hope to persuade you is the wrong one—that you could write a decision tightly enough and specifically enough so that we would not be condemned to four or five more years, to delay and more delay and indecisive decisions that are vacated and reversed, changes of action two or three times. That I think is worse than any possible fate. An open-ended remand in the

tract asks a court to invalidate one portion of an unseverable contract while leaving the remainder in effect. Once the court determines that the challenged provision is unseverable, it ordinarily dismisses the suit, instead of entertaining the possibility of entering an unrequested decree voiding the entire agreement. *See Lummus Co. v. Commonwealth Oil Refining Co.*, 280 F.2d 915, 927–28 (1st Cir.1960); *Hayutin v. Weintraub*, 207 Cal.App.2d 497, 24 Cal. Rptr. 761, 768–70 (Ct.App.1962). The same sensible course should be followed where the matter at issue is a request to invalidate an unseverable portion of unitary action on the part of a public agency. In suits to review agency action, as in purely private suits, our function is to provide relief to aggrieved litigants. It does not further that objective to issue an unrequested decree that revivifies as many grievances as it puts to rest.

The matter that is the subject of this petition has remained unresolved for over a decade, and has been back and forth to this court (adopting a conservative method of calculation) six times, and to the Supreme Court once. We are not disposed to undo a resolution viewed as fair by all the parties except one, in a fashion that even that one does not propose and from which it would not clearly benefit. Because the Commission's disposition of Transco I is unseverable from its disposition of Transco II and III, we cannot afford petitioners the relief requested or any other relief that is under the circumstances appropriate.

*Petition Denied.*

context of this case and given the history of what this Commission has done—I must say that I thought Judge Wilkey's opinion five years ago was definitive and tight and clear as to what was required. The Commission apparently did not agree—it's taken us five years to get back here. We certainly don't want that again. If the issue is will we take a crumb or will we take nothing at all, yes we'll take a crumb. We don't think that's the right choice or the right approach.

COURT: I understood you until you started talking about crumbs. The crumb is not sending it back entirely? That is, the crumb is leaving it the way it is?

MR. SIMONS: Yes.

Oral Argument (Sept. 30, 1983).