[ANONYMOUS] Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. No. 85–2622.

United States District Court, District of Columbia.

Oct. 10, 1985.

Geoffrey J. Vitt, Julie W. Davis, Caplin & Drysdale, Washington, D.C., for plaintiff.

Ann S. DuRoss, Asst. U.S. Atty., Washington, D.C., for defendant; Ronald R. Glancz, Asst. Gen. Counsel, Ingeborg G. Chaly, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C., of counsel.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This case involves the authority of the Federal Deposit Insurance Corporation (FDIC) (1) to prohibit a bank officer, who may have participated in the making of imprudent loans, from working for any federally insured bank in the United States without prior permission from the FDIC, and (2) to take such action at the initiation of administrative procedures designed to determine the bank officer's culpability rather than at their conclusion.

I

Plaintiff is a banker who holds positions in several small banks in the southeastern United States. He served as the President of _____ Bank _____ in _____ from March 10, 1981 to November 9, 1982, and as a director of that bank from March

10, 1981 to January 24, 1984, and from July 10, 1984 to July 19, 1985. Until the actions taken by the FDIC which are the subject of this lawsuit, he also served as a director of the _____ Bank of _____ in _____ the _____ Bank in _____ and _____ Bank in _____.

In March of 1985, the FDIC, which is responsible for monitoring federally insured banks, and empowered to detect, prevent, and remedy violations of federal banking laws and unsafe banking practices,[1] commenced an examination of the _____ Bank. The examination revealed a number of loans of allegedly "inferior quality," and according to the FDIC examiners, a check of the bank records revealed that plaintiff was associated in various degrees with the major portion of these problem loans.[2]

Following this examination of _____ Bank, the FDIC served a notice on plaintiff on August 5, 1985, advising him that, pursuant to 12 U.S.C. § 1818(e)(1) and (2), it was initiating administrative procedures to remove him from office at _____ and to prohibit him from any future participation *in any other federally insured bank.* Further, under 12 U.S.C. § 1818(e)(4),[3] the FDIC issued an interim suspension order removing plaintiff from office and prohibiting him from further banking participation forthwith pending resolution of the administrative removal proceedings.[4]

Plaintiff thereupon brought this action, petitioning the Court to set aside or stay the FDIC's interim suspension order, in accordance with 12 U.S.C. § 1818(f)—a specific provision granting authority to the courts to stay FDIC interim suspension orders.[5]

After a hearing and consideration of the papers submitted by the parties, the Court, on August 22, 1985, 617 F.Supp. 509, granted plaintiff's motion for a temporary stay and remanded the interim suspension order to the FDIC for reconsideration in light of the Court's Memorandum Order. Specifically, the Court prohibited the FDIC tempo-

---

1. See H.R.Rep. No. 150, 73d Cong., 1st Sess. 5, 6 (1933); see also, *First State Bank of Hudson County v. United States,* 599 F.2d 558, 562 (3d Cir.1979).

2. Specifically, the FDIC alleges that plaintiff caused or allowed _____ Bank to make to _____ a loan which exceeded the legal lending limit of the bank and that plaintiff directed the purchase of a participation in another bank's loan to _____ also exceeding the legal lending limit. These loans allegedly resulted in an unsafe concentration of credit and were inadequately protected by the current sound worth of the borrower or the collateral pledged. In addition, the FDIC claims that plaintiff allowed the bank to extend an unsound and unsecured loan to _____ which he personally guaranteed, as well as allowing or causing the bank to engage in a number of smaller loans later classified by the FDIC as "Loss," "Doubtful," or "Substandard." See Amended Notice of Intention to Remove from Office and Prohibit from Further Participation, September 9, 1985 at 4–6.

Plaintiff does not deny that the loans were made, but he does claim that the FDIC is in error as to the degree of his involvement in the loans, arguing in essence that he did not "cause" these loans to be made or exercise any significant authority in "allowing" them to be made. Plaintiff also argues that not all of the loans the FDIC mentioned were unsafe and unsound.

3. See note 25, *infra.*

4. By way of explanation for its action, the FDIC order simply stated that the agency "[had] reason to believe by virtue of the misconduct alleged in the Amended Notice of Intention to Remove, Respondent has thereby evidenced his unfitness to participate" in the conduct of the affairs of _____ Bank or of any other federally insured bank. See August 5, 1985 Order of Suspension from Office and Prohibition from Further Participation.

5. Section 1818(f) provides that:
Within ten days after any director, officer, or other person has been suspended from office and/or prohibited from participation in the conduct of the affairs of an insured bank under subsection (e)(4) of this section, such director, officer, or other person may apply to the United States district court for the judicial district in which the home office of the bank is located, or the United States District Court for the District of Columbia, for a stay of such suspension and/or prohibition pending the completion of the administrative proceedings pursuant to the notice served upon such director, officer, or other person under subsection (e)(1), (e)(2), or (e)(3) of this section, and such court shall have jurisdiction to stay such suspension and/or prohibition.

rarily from acting against plaintiff under the broad terms of the August 5 suspension order, without prejudice, however, to the agency's issuance of new interim suspension orders on a bank-by-bank basis based upon an agency determination that the order was necessary to protect the particular bank. The Court noted in its Memorandum that a remand was necessary because the FDIC order did not contain a reasoned explanation of the factors justifying plaintiff's suspension from participation in the affairs of *any* federally insured bank, and that this precluded the Court from conducting a meaningful review of the agency decision. The Memorandum further explained that the suspension order also failed to provide any explanation as to the reasons for the drastic measure of an immediate suspension order as distinguished from some other, lesser measure, such as a cease-and-desist order under section 1818(c)(1) [6] or an order under section 1818(e)(1) or (e)(2) (which would have effected plaintiff's removal following the completion of the administrative proceedings).

The apparent lack of criteria to guide the agency's discretion in choosing between emergency suspension orders issued at the initiation of administrative proceedings, and ordinary orders issued following the administrative process, led the Court to suggest that the FDIC promulgate some standards to guide agency officials in that regard, and incidentally thereby also to provide the courts with an adequate basis for review.[7]

Upon remand, the FDIC reconsidered and rescinded the August 5 order, replacing it on September 9, 1985 with an Amended Order of Suspension.[8] The Amended Order contains two basic provisions: (1) it prohibits plaintiff from further participation in the affairs of both the _____ and the _____ banks pending the outcome of the administrative proceedings; and (2) it requires plaintiff to secure prior written approval before serving or acting as a director, officer, or employee of *any* federally insured bank or voting for a director of any such bank.

On September 16, 1985, plaintiff petitioned the Court for a stay of the Amended Order, challenging it on the same grounds as asserted against the original order, as failing to provide an adequate legal and factual rationale for the blanket prohibition and, more broadly, as exceeding the agency's statutory authority.[9]

The FDIC opposed plaintiff's request for the stay, claiming that it had reconsidered plaintiff's suspension in accordance with the Court's Memorandum Order and had issued a narrower suspension order justified under the circumstances. The FDIC further claimed full authority under the statutory scheme to issue broad, industry-wide orders.

## II

It is clear that the Amended Order, like the FDIC's original order, amounts to a blanket order barring plaintiff's participation in all federally insured banks pending the outcome of the administrative proceedings,[10] in that it suspends plaintiff

---

**6.** 12 U.S.C. § 1818(c)(1) empowers the appropriate federal banking agency to issue a temporary interim cease and desist order against a bank or its officers or directors to halt practices likely to cause insolvency or substantial dissipation of assets.

**7.** The statute is clear that the agency decision to issue an interim suspension order is a reviewable decision.

**8.** The September 9, 1985 FDIC action consisted of a Resolution of the FDIC Board of Directors, an Amended Notice of Intent to Remove, and Amended Order of Suspension.

**9.** The Court deferred resolution of the statutory issue in its August 22 Memorandum (although it was then also raised by plaintiff) because it anticipated that the terms of the restraining order might result in the issuance of new, narrower orders, *thereby mooting the issue. Slip op.* at 24. However, because the amended suspension order raises the same issue, the Court addresses the issue *infra* in Part II of this Memorandum.

**10.** The relevant portion of the order reads:
FURTHER ORDERED that respondent shall not, prior to the completion of the administrative proceedings herein, * * * (ii) without the

from all banks unless and until he receives prior written permission. The issue whether this kind of blanket restriction is within the statutory authority of the FDIC requires an examination of the statutory scheme in 12 U.S.C. § 1818(e)–(f) which governs the suspension and removal of bank officials.[11]

The FDIC is charged with monitoring the safety and soundness of federally insured banks and is clothed with broad authority to accomplish that goal. *First National Bank of Bellaire v. Comptroller of the Currency*, 697 F.2d 674, 680 (5th Cir.1983). Among its other regulatory powers, the agency is empowered to take action against individual bank officers and directors whose unsafe or illegal actions harm or threaten to harm federally insured banks. See 12 U.S.C. § 1818 *et seq.* To enable it to guard against the unsound, unsafe, or fraudulent practices of individual bank officers and directors, the FDIC has the authority to invoke a variety of sanctions against suspect individuals, including temporary and permanent cease-and-desist orders as well as the types of interim and permanent suspension orders at issue in this case.

The two provisions specifically governing the suspension or removal of directors and officers are subsections (e)(1) and (e)(2) of section 1818, title 12 of the U.S.Code. Subsection (e)(1) provides:

(e)(1) Whenever, in the opinion of the appropriate Federal banking agency, *any director or officer of an insured bank* has committed any violation of law, rule, or regulation or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice *in connection with the bank,* or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as

such director or officer, and the agency determines that *the bank has suffered or will probably suffer* substantial financial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty or that the director or officer has received financial gain by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, or one which demonstrates a willful or continuing *disregard for the safety or soundness of the bank,* the agency may serve upon such director or officer a written notice of its intention *to remove him from office* (emphasis added).

It is clear from the language of this provision that the statute grants authority to the FDIC to remove a bank officer for misconduct or mismanagement related to his tenure as an official for that particular bank.[12] Thus, if an individual has mismanaged Bank A, he may be suspended or removed as an officer from Bank A. But there is nothing in subsection (e)(1) to grant power to the FDIC to remove an officer or director from Banks B, C, and D for misconduct at Bank A: the provision speaks only in terms of misconduct "in connection with *the* bank" for which the individual serves as an officer or director. Thus, the language of subsection (e)(1) does not, on its face, support the provision in the FDIC's amended order which restricts plaintiff's activities in all other banks as a result of alleged misconduct at _____.

12 U.S.C. § 1818(e)(2) reaches further than (e)(1), reading:

(2) Whenever, in the opinion of the appropriate Federal banking agency, any

---

prior written approval of the appropriate Federal banking agency, vote for a director, serve or act as a director, officer, or employee of any bank.
September 9, 1985 Amended Order of Suspension from Office and Prohibition from Further Participation.

**11.** No statutory provisions other than section 1818(e)–(f) pertain to the removal and suspension of bank officials.

**12.** The FDIC seeks to remove plaintiff from office at _____ on (e)(1) grounds in the first provision of the Amended Order.

director or officer of an insured bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured bank, *by conduct or practice with respect to such bank or other insured bank or other business institution* which resulted in substantial financial loss or other damage, has evidenced *either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to participate in the conduct of the affairs of such insured bank,* the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office or to prohibit his further participation in any manner in the conduct of the affairs of the bank (emphasis added).

Insofar as here relevant,[13] the (e)(2) provision allows the FDIC to remove an officer or director of an insured bank from his position in that bank as a result of that individual's misconduct "with respect to another insured bank or other business institution." 12 U.S.C. § 1818(e)(2). Thus, under this provision of (e)(2), in contrast to (e)(1), a bank officer serving at Bank A may be removed or suspended from Bank A because of misconduct he or she engaged in some respect at Bank B or C or even at Business D.[14] However, this broader suspension power is carefully limited; it may

be exercised only if the other requirements for removal as set forth in (e)(2) are satisfied.

These requirements include, *inter alia,* a finding by the FDIC of personal dishonesty or a willful or continuing disregard for a bank's safety and soundness, and *in addition,* a finding that the misconduct evidences the individual's "unfitness to continue as a director or officer" of the second bank. It is clear from this congressional scheme that the statute contemplates a bank-by-bank analysis of the individual's misconduct by the FDIC, and the relationship of that misconduct to his fitness to serve in a particular insured bank. In other words, both (e)(1) and (e)(2) anticipate removal and suspension from individual banks based upon the appropriate designated findings: the statutory language of both provisions unambiguously speaks in terms of removal from "the bank," not "any" bank or "all" banks.

An examination of the legislative history supports this reading of section 1818. The removal and suspension provisions of the statute were incorporated into the Federal Deposit Insurance Corporation Act in 1966 to "strengthen the regulatory and supervisory authority of Federal agencies over insured banks." S.Rept. No. 1482, 89th Cong., 2d Sess., 1, U.S.Code Cong. & Admin.News 1966, 5532. As the Senate Report accompanying the Act makes clear, however, section 1818(e) attempts to balance the federal agency's interest in protecting insured banks with "the interests of insured banks ... and their officials in receiving fair treatment from the Government, and in receiving a reasonable degree of protection from government actions which might at times, for one reason or another, generate into arbitrary, capricious

---

**13.** 12 U.S.C. § 1818(e)(2) also permits the FDIC to remove or suspend "any other person participating in the affairs of an insured bank," that is, even someone who is not an officer or director. Such an individual may be removed from office from the insured bank or prohibited from further participation in any manner in the conduct of the affairs of the insured bank as a result of

misconduct "with respect to such bank or other insured bank or other business institution."

**14.** The FDIC seeks to remove plaintiff from the _____ Bank on (e)(2) grounds. That provision is presumably also the basis for the FDIC's flat prohibition on service by plaintiff in any federally insured bank in the United States without prior agency clearance.

and overbearing tactics." *Id.* The Senate Committee was well aware of the potentially destructive ramifications of granting the FDIC the power to remove or suspend bank officers,[15] writing in the Committee Report that "the power to suspend or remove an officer or director of a bank or savings and loan association is an extraordinary power, which can do great harm to the individual affected and to his institution and to the financial system as a whole. *It must be strictly limited and carefully guarded.*" *Id.* at 8 (emphasis added).[16] In response to these concerns, the Senate Committee incorporated into section 1818 both the subsection (f) stay provision invoked by the plaintiff here, as well as a narrow and careful delineation of the circumstances under which an individual may be suspended or removed from office in order to protect the interests of individuals subject to suspension orders. S.Rept. at 8.[17]

Thus, both a reading of the statutory language and an examination of the legislative history indicate that Congress intended that the FDIC's power to remove or suspend bank officers be carefully limited. Congress accomplished these objectives by imposing limitations on the use of suspension power in the statutory provisions, and further, by ensuring that any exercise of the suspension power could be reviewed by the judiciary.

■ The FDIC's claim that Congress intended to confer upon the agency virtually unlimited power to remove or suspend officers and directors is inconsistent with this reading of the statute.[18] In attempting to provide the Court with authority for its suspension of plaintiff, the FDIC does not point to subsections (e)(1) or (e)(2), or indeed, to any other specific provision in the Federal Deposit Insurance Corporation Act. Instead, the FDIC claims it derives authority to issue a blanket suspension against plaintiff, restricting his participation in "any bank," from the generally recognized principle that "once the bank regulatory agency has found a violation ... [it] may, within [its] allowable discretion, fashion relief in such a form to prevent future abuses."[19] Defendant's Opposition to Plaintiff's Petition to Set Aside or Stay Amended Order at 25, citing *Federal Trade Commission v. Mandel Brothers, Inc.,* 359 U.S. 385, 392–93, 79 S.Ct. 818, 824, 3 L.Ed.2d 893 (1959).

**15.** This concern was the primary subject of the floor debate on the bill, see 112 Cong.Rec. 20232 *et seq.*

**16.** Section 1818 as originally passed in 1966 allowed the FDIC to exercise suspension power only in cases of personal dishonesty. S.Rept. No. 1482, 89th Cong., 2d Sess., at 3, U.S.Code Cong. & Admin.News 1966, at 3533. This limitation on the provision's use was deliberately included in the Act to restrict the FDIC's discretion in issuing suspension orders. *Id.* at 8. *See also,* 112 Cong.Rec. 20232–20235. Section 1818(e)(1) and (2) were more recently amended, however, to expand the ability of the FDIC to use suspensions both in a circumstance of personal dishonesty and "one which demonstrates a willful or continuing disregard for the safety or soundness of the bank." H.R.Rept. No. 1383, 95th Cong., 2d Sess., at 5, 18, U.S.Code Cong. & Admin.News 1978, 9273, 9277, 9290. As the legislative history makes clear, however, Congress did not intend to grant the FDIC unlimited discretion when it expanded its suspension authority, retaining its earlier concerns about limiting the power and providing protections for individuals. *Id.*

**17.** Although these circumstances were expanded in the 1978 amendment of the Act as explained in note 16, *supra,* the authority to issue suspension orders is still carefully limited.

**18.** It is instructional to note that judicial review of any FDIC action under section 1818 in general is extremely limited by the terms of the statute. See section 1818(h), (i). A section 1818(f) action to stay an interim suspension order is one of the rare circumstances where a court may intervene in the FDIC enforcement process prior to a final decision on the merits.

**19.** In arguing this point, the FDIC repeatedly mentions the agency's responsibility to protect the public, which is indeed one of the most important purposes underlying the grant to the agency of suspension powers. S.Rept. No. 1482, 89th Cong., 2d Sess., 1. At no point, however, does the FDIC address the other interests Congress took into account in drafting the scope of the removal provisions: those of the bank management and of the individual bank officers. *Id.* at 8.

The FDIC's reliance on this principle is flawed in the present context. As the quotation from *Mandel Brothers* makes clear, agency power is limited to the exercise of "allowable discretion." Suspending an individual from all banks in a blanket order goes plainly beyond the "allowable discretion" granted to the FDIC to act on a bank-by-bank basis by sections 1818(e)(1) and (e)(2).

Congress purposefully limited the use of suspension and removal power to certain types of circumstances, well aware of the dangers of granting unfettered discretion to the FDIC to wield such potentially devastating power. It did not grant to the FDIC unlimited suspension powers; to the contrary, it carefully limited the exercise of the agency's authority. In such circumstances, reliance upon general principles and powers will not do.[20] See *Fox v. Reich & Tang, Inc.*, 692 F.2d 250, 255 (2d Cir. 1982); see also, *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1190, 1255 (E.D.Pa.1980). In light of the specific provisions in the statute that narrowly govern the FDIC's use of suspension power, Congress cannot possibly have intended that the FDIC also be empowered to exercise a broad blanket suspension power derived from only the agency's general enforcement powers without any limitation on its use.

As the FDIC recognizes, the principle of wide FDIC discretion in fashioning relief applies only "once the regulatory agency has found a violation or unsafe practice." Here, the agency has made no such finding: it is barring plaintiff from all banks at the very outset of the administrative process. The statute itself, of course, makes a distinction between what the agency is empowered to do on an emergency interim basis and what it is empowered to do following an administrative proceeding to ascertain the facts and merits of an alleged impropriety.[21] At a minimum, the agency may not issue a blanket, nationwide order where only interim conclusions have been reached, especially given the serious hardship of a suspension from office upon an individual and the length of time an interim suspension is likely to be in effect.[22]

Finally, the FDIC attempts to justify its amended order on the basis that it needs the power to suspend individuals on a blanket basis if it is to fulfill its responsibility to protect insured banks. 12 U.S.C. § 1818(j) does empower the FDIC to do just that—to issue a suspension order identical to the one handed down here, but only *after* there has been a determination of misconduct on the merits and a final order has been issued. Additionally, Congress has granted to the FDIC in section 1818(e)(1) and (e)(2) the power to suspend dangerous individuals from an unlimited number of banks—it simply requires that the suspension be on a bank-by-bank, individualized basis.[23]

**20.** Indeed, if such a broad suspension power did exist, it would render redundant and unnecessary the narrower, specific statutory suspension provisions contained in sections (e)(1) and (e)(1).

**21.** 12 U.S.C. § 1818(f) (availability of stay for interim suspension orders); section 1818(e)(2) (availability of injunction for interim cease-and-desist orders); *compare* section 1818(b)(1) *with* (c)(1) (higher standard of proof for temporary cease-and-desist orders than for permanent cease-and-desist orders); and section 1818(e)(4) *with* section 1818(e)(1) and (e)(2) (interim suspension order invoked in removal proceedings only if necessary to protect bank).

**22.** See *infra* note 27.

**23.** This does not mean that the agency must necessarily await the occurrence of misconduct at a particular bank before it may bar an individual from that bank. Some kinds of conduct (*e.g.,* that involving personal dishonesty) are of such nature that a finding might possibly be made that the individual cannot serve in banks generally in a capacity which would permit a repetition of the alleged conduct, thereby establishing the requisite relationship between the alleged misconduct and the individual's fitness to continue or be in office anywhere. But where, as here, the claim is one of imprudent investments by one member of a twelve-member board of directors, it simply makes no sense, consistently with the statutory scheme, to bar that one member automatically from all banks (or to require prior permission) even though he might not even be in a position at the second bank to make investments.

The Court finds that the portion of the FDIC's amended order requiring plaintiff to obtain prior written approval before voting for a director, or serving or acting as a director, officer or employee of any bank, exceeds the agency's statutory authority [24] and is void.

### III

The FDIC clearly had the power to suspend plaintiff from the _____ Bank pursuant to subsection (e)(1) and from the _____ Bank under subsection (e)(2). Accordingly, the Court's review of the order pursuant to 12 U.S.C. § 1818(j) with respect to these banks consists only of an analysis of the appropriateness of issuing a section 1818(e)(4) *interim* suspension order.

Section 1818(e)(4) permits the FDIC immediately to suspend or remove individuals subject to subsequent administrative removal proceedings under section 1818(e)(1) and (e)(2), during the pendency of the administrative proceedings and prior to a decision on the merits of the removal.[25] The only guidance the statute offers for the appropriate invocation of the interim suspension provision is that it may be issued "if [the appropriate federal banking agency] deems it necessary for the protection of the bank or the interests of its depositors." 12 U.S.C. § 1818(e)(4).[26]

The Amended Order prohibits plaintiff from further participation in any manner in the conduct of the affairs of _____ and _____ banks, suspending him effective immediately from office as a director, officer, or participant in the conduct of the affairs of the _____ bank, pending completion of the administrative removal hearings.

These suspensions are based upon an examination of _____ Bank conducted in March and April of 1985. According to the FDIC's Amended Notice of Intention to Remove from Office, plaintiff was responsible for three unsafe and unsound banking practices with respect to several loan transactions made by _____ Bank. Plaintiff vigorously denies his involvement in the loans, and argues that the FDIC's affidavits are insufficient to support the allegations.

The (e)(4) provisions (in combination with the (e)(1) and (e)(2) provisions) establish a stringent set of requirements which must be satisfied before the agency may take the extreme measure of suspending or removing an officer or director of an insured bank on an interim basis pending administrative proceedings. Indeed, the Court issued its August 22 stay, at least in part, because of the FDIC's failure to provide *any* basis for determining how and on what basis it had exercised its discretion in issuing the (e)(4) order[27] or on what basis it would do so in any other case.

**24.** Even if the FDIC were right in its assertion that the power to issue blanket orders is essential to its ability to function effectively, it is for Congress to grant it the requisite authority.

**25.** Section 1818(e)(4) provides:
In respect to any director or officer of an insured bank or any other person referred to in paragraph (1), (2), or (3) of this subsection, the appropriate Federal banking agency may, if it deems it necessary for the protection of the bank or the interests of its depositors, by written notice to such effect served upon such director, officer, or other person, suspend him from office or prohibit him from further participation in any manner in the conduct of the affairs of the bank. Such suspension or prohibition shall become effective upon service of such notice and, unless stayed by a court in proceedings authorized by subsection (f) of this section, shall remain in effect pending the completion of the administrative proceedings pursuant to the notice served under paragraph (1), (2), or (3) of this subsection and until such time as the agency shall dismiss the charges specified in such notice, or, if an order of removal or prohibition is issued against the director or officer or other person, until the effective date of any such order. Copies of any such notice shall also be served upon the bank of which he is a director or officer or in the conduct of whose affairs he has participated.

**26.** That broad language is coupled, however, with the provision allowing the courts to review suspension orders and grant stays thereof.

**27.** The FDIC notes that even an expedited administrative proceeding "will undoubtedly take between 9 and 12 months" to complete. Defendant's Memorandum in Opposition to Stay of

The Amended Order does not significantly fill that vacuum. The statement of reasons for the suspension accompanying the Amended Order is substantially identical to the statement of reasons accompanying the first order.[28] The only other new material offered in support of the Amended Order consisted of an affidavit submitted by a FDIC official and an "opinion," in which the FDIC attempts to rebut claims made by plaintiff regarding his role in two other banks, _____ and _____. Neither the affidavit nor the opinion nor any other material submitted by the FDIC explains why the alleged misconduct at _____ even if it did occur, warrants interim suspension.

Section 1818(e)(4) requires more than a simple finding that unsafe or unsound practices have occurred; in addition, the interim suspension must be "necessary for the protection of the bank and its depositors." The furthest extent the FDIC had gone to establish that factor is a simple repetition of the statutory language to the effect that the FDIC "has deemed it necessary for the protection of _____ Bank and _____ Bank and the interests of their depositors that responded be suspended from office ..." Amended Order at 2. Even after a request from the Court for more detailed reasons for the agency action, the FDIC still fails adequately to explain why, *on the facts of this case*, plaintiff's alleged misconduct at _____ seriously threatens the safety of _____ and _____ banks pending the completion of the administrative proceedings.

▮ Even accepting the FDIC version of the facts, plaintiff was involved in two or three troubled loans, and then only in a tangential way.[29] There is no allegation of dishonesty, habitually disastrous banking practices, or any other type of misconduct that might indicate that plaintiff will constitute a serious threat to those two banks pending resolution of the administrative action. The FDIC delayed until August 1985 to institute the removal proceedings even though it had discovered _____ problem loans in March of this year. This delay casts serious doubt on the agency claim that now, when the FDIC has finally bestirred itself, plaintiff's *immediate* removal is necessary for the protection of those banks (especially since plaintiff has not even participated in the affairs of _____ since his resignation from that bank's Board of Directors in July 1985).

Thus, even assuming that the FDIC has established a colorable claim that plaintiff was involved in some of the problem loans at _____ the Court finds that the practices at issue here do not rise to the standard imposed in subsection (e)(4) for an interim suspension action.

## IV

In addition to finding that the FDIC has not satisfied the requirements of (e)(4) in issuing the interim amended order, the Court finds that the plaintiff likewise prevails on the other prerequisites for preliminary relief.[30] The severe and permanent

Amended Order at 22. Thus, an "interim" suspension order would be in effect for that entire period of time.

28. The statement of reasons accompanying both orders basically consists of the allegations of misconduct, see *supra* note 2, and a parrotting of the statutory language. Thus, the order reads without further elaboration that because of plaintiff's misconduct, the FDIC finds the statutory requisites satisfied.

29. See FDIC Amended Notice of Intention to Remove, p. 3 *et seq.*, for the FDIC's specific allegations of impropriety, summarized in note 2, *supra*.

30. Although it is unclear what standard is applicable in issuing a section 1818(f) stay, the Court

will apply the traditional test for preliminary relief set forth in *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958). Under this standard, the plaintiff must show: (1) that he enjoys a substantial likelihood of success on the merits; (2) that absent such relief he will suffer irreparable injury: (3) that the requested relief will not substantially harm other parties to the litigation; and (4) that the public interest favors the granting of the requested relief. *Id.;* see also, *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 151 (D.C.Cir.1985). The discussion in Part III of the Memorandum, *supra*, shows that plaintiff has satisfied the first requirement of the *Virginia Petroleum Jobbers* test.

potential injury to plaintiff's business reputation as a result of a 9 to 12 month interim suspension,[31] together with economic hardship caused by the destruction of plaintiff's banking career, clearly constitute irreparable injury. In contrast, it would be disingenuous for the FDIC to claim severe or immediate injury to the public if plaintiff is allowed to remain in office, given their own delay from March to August in instituting any action against plaintiff.[32]

For the reasons stated herein, the Court will grant the plaintiff's motion for a preliminary injunction.

---

**31.** See *supra* note 27.

**32.** Because the FDIC is presumed to be acting to protect the public interest, factors 3 and 4 merge in the instant case.