[ANONYMOUS], Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. No. 85–2622.

United States District Court, District of Columbia.

Aug. 22, 1985.

Geoffrey J. Vitt, Julie W. Davis, Caplin & Drysdale, Washington, D.C., for plaintiff.

Ann S. DuRoss, Asst. U.S. Atty., Washington, D.C., for defendant; Ronald R. Glancz, Asst. Gen. Counsel, Ingeborg G. Chaly, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C., of counsel.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff _____ has served as an officer or director of several small banks _____.[1] Defendant Federal Deposit Insurance Corporation (FDIC) is charged with monitoring the performance of federally insured banks and is empowered to detect, prevent, and remedy violations of federal banking laws and unsafe banking practices. See 12 U.S.C. § 1818(e); *First National Bank of Scotia v. United States*, 530 F.Supp. 162, 166 (D.D.C.1982). On August 5, 1985, the FDIC served notice on plaintiff that, in the wake of its investigation of _____ Bank, of which he had been an officer and director,[2] it was initiating an administrative proceeding pursuant to 12 U.S.C. § 1818(e)(1) and (2)[3] to remove him from office and to prohibit him from

---

**1.** To protect confidentiality, see *infra* Part II, the names of banks and individuals have been redacted.

**2.** Plaintiff has stated that he served as president of the _____ Bank from _____ 1981 to _____ 1982, when he resigned due to the press of other commitments, and as a director of the bank from March 1981 to _____ 1985, when he resigned because the bank had been sold on that date to a new owner. Plaintiff's Affidavit at 1, 7.

**3.** Sections 1818(e)(1) and (2) of Title 12 of the U.S. Code provide as follows:

Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank has committed any violation of law, rule, or regulation or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial financial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty or that the director or officer has received financial gain by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, or one which demonstrates a willful or continuing disregard for the safety or soundness of the bank, the agency may serve upon such director or officer a written notice of its intention to remove him from office.

12 U.S.C. § 1818(e)(1).

Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evi-

further participation in the affairs of other federally insured banks. On that same day, the FDIC notified plaintiff that, pursuant to its authority under 12 U.S.C. § 1818(e)(4) [4] it had issued an interim order immediately suspending plaintiff from office and prohibiting him from participating in any way in the affairs of any federally insured bank pending the outcome of the administrative removal proceedings.

Plaintiff promptly [5] brought suit in this Court seeking a temporary restraining order and/or a stay of the FDIC's interim suspension order (see 12 U.S.C. § 1818(f)) [6] and a declaratory judgment that the FDIC proscription from participation in the affairs of any federally insured bank was overbroad and beyond the FDIC's statutory authority. The FDIC has opposed plaintiff's motions, has moved to transfer

venue, and has moved for reconsideration of the Court's previous order sealing these proceedings. The Court heard oral argument on all of the motions on August 16, 1985, and they are now ripe for decision.

I

■ The FDIC has moved to transfer this case pursuant to 28 U.S.C. § 1404(a) to _____, which is the district in which the home office of the _____ Bank is located and is therefore the alternative district in which this suit may be brought under 12 U.S.C. § 1818(f). In support of its motion the FDIC argues that at least two of the bank examiners whose testimony might prove useful are located in that district and that other examiners and documents are located in Memphis, Tennessee, which is

---

denced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured bank, by conduct or practice with respect to such bank or other insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to participate in the conduct of the affairs of such insured bank, the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office or to prohibit his further participation in any manner in the conduct of the affairs of the bank.
12 U.S.C. § 1818(e)(2).

4. Section 1818(e)(4) of Title 12, U.S. Code, provides that:

In respect to any director or officer of an insured bank or any other person referred to in paragraph (1), (2), or (3) of this subsection, the appropriate Federal banking agency may, if it deems it necessary for the protection of the bank or the interests of its depositors, by written notice to such effect served upon such director, officer, or other person, suspend him from office or prohibit him from further participation in any manner in the conduct of the affairs of the bank. Such suspension or prohibition shall become effective upon service of such notice and, unless stayed by a court in

proceedings authorized by subsection (f) of this section, shall remain in effect pending the completion of the administrative proceedings pursuant to the notice served under paragraph (1), (2), or (3) of this subsection and until such time as the agency shall dismiss the charges specified in such notice, or, if an order of removal or prohibition is issued against the director or officer or other person, until the effective date of any such order. Copies of any such notice shall also be served upon the bank of which he is a director or officer or in the conduct of whose affairs he has participated.

5. Plaintiff received the FDIC's notice of interim suspension on August 9, 1985 and filed this lawsuit on August 15, well within the statutory ten-day time limit. See 12 U.S.C. § 1818(e)(4), (f).

6. Section 1818(f) provides that:

Within ten days after any director, officer, or other person has been suspended from office and/or prohibited from participation in the conduct of the affairs of an insured bank under subsection (e)(4) of this section, such director, officer, or other person may apply to the United States district court for the judicial district in which the home office of the bank is located, or the United States District Court for the District of Columbia, for a stay of such suspension and/or prohibition pending the completion of the administrative proceedings pursuant to the notice served upon such director, officer, or other person under subsection (e)(1), (e)(2), or (e)(3) of this section, and such court shall have jurisdiction to stay such suspension and/or prohibition.

somewhat closer to that court than to Washington, D.C.

The courts have repeatedly held, however, that unless the balance of conveniences greatly favors the alternative forum, the plaintiff's forum choice should ordinarily be afforded considerable respect. See, *e.g., NAACP v. Levi,* 418 F.Supp. 1109, 1113–14 (D.D.C.1976); see generally, 15 Wright, Miller & Cooper, *Federal Practice and Procedure:* Civil § 3848 (1976 and Supp.). Here, the relevant statute explicitly establishes the District of Columbia as an appropriate forum for hearing section 1818(f) stay proceedings. See note 6, *supra.* The FDIC maintains its main offices here. Although the distance from Memphis to the alternative district may be somewhat less than from Memphis to Washington, air transportation from Memphis to the District can hardly be considered more difficult than transportation to the alternative district. And finally, neither the parties nor the Court contemplate lengthy proceedings in this action. In such circumstances, the Court sees no basis whatever for concluding that the Western District of _____ would be a significantly more convenient forum for the parties and witnesses and for transferring the case there in derogation of plaintiff's forum choice. Accordingly, the motion to transfer venue will be denied.

## II

▆ The FDIC has also requested the Court to reconsider its previous order (per Johnson, J.), granting plaintiff's motion to seal the entire proceeding in this case. In support of this request, the FDIC notes that there is a strong presumption that judicial proceedings should be open to the public unless closure is essential to the interests of justice. See *In re Application of National Broadcasting Co. (United States v. Jenrette),* 653 F.2d 609, 612–13 (D.C.Cir.1981); 28 C.F.R. § 50.9. At the same time, the FDIC seeks to maintain under seal all copies of the relevant FDIC bank examiners' reports, which have tradi-

tionally been recognized to be confidential and privileged. See *Bank of America National Trust & Savings Ass'n v. Douglas,* 105 F.2d 100, 104 (D.C.Cir.1939); *Denny v. Carey,* 78 F.R.D. 370, 373 (E.D.Pa.1978).

The federal courts have recognized that the sealing of court records may be justified when a litigant's privacy interest outweighs the public's right to know, and that the balancing of these important interests is a matter committed to the trial court's sound discretion. See *In Re Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 474 (6th Cir.1983). In this case the allegation in plaintiff's papers, which must be accepted as true for the purpose of deciding this motion, is that disclosure of the pending FDIC administrative proceeding and enforcement of the interim suspension order will irreparably destroy his reputation in the _____ banking community. Indeed, it is precisely to prevent the injury that would accrue from the publicity attendant to the disclosure of the pending FDIC administrative removal proceedings that plaintiff has initiated the instant suit.[7]

The FDIC's proposed modification of the sealing order, which would seal the bank examiners' reports but unseal all other aspects of these proceedings, would frustrate this purpose. The release of some, but not all, of the information brought forward in this proceeding would necessarily create a significant possibility that the publicly available information would create a distorted, misleading impression of the allegations and evidence involved. It would also achieve the perverse result that plaintiff's § 1818(f) stay application to prevent injury to his reputation would trigger precisely the sort of adverse publicity he has filed this suit to prevent. Finally, and most importantly, unsealing these proceedings might not only harm plaintiff's reputation but also undermine public confidence in the soundness of the banks which he participates in managing. Such results seem neither necessary nor just.

---

**7.** Plaintiff's Affidavit at 8–9.

For these reasons, the Court will deny at this time the motion for reconsideration of its order placing this entire proceeding under seal. However, if the circumstances of this litigation change the balance between plaintiff's privacy interest and the public's right to know, the Court may reconsider its decision, either upon motion or *sua sponte*.

### III

■ This brings us, finally, to the merits of plaintiff's motions. In support of his motion for a stay under 12 U.S.C. § 1818(f) of the FDIC's interim suspension order, plaintiff argues that he clearly satisfies the traditional criteria for preliminary injunctive relief,[8] which are presumably applicable to § 1818(f) stay proceedings.[9] The FDIC counters that he satisfies none of them.

### A.

It must be noted at the outset that a proper evaluation of plaintiff's stay request is rendered considerably more difficult not only by the expedited nature of these proceedings, but also by the vagueness of the relevant statutory language, which the FDIC has done nothing to make clearer. The § 1818(e)(4) interim suspension provision pursuant to which the FDIC issued its order is analogous in a sense to a preventive detention statute: it constrains an individual's liberty *pendente lite* on the grounds that the individual poses such a severe threat to the public safety that the extraordinary remedy of a pretrial restraint is justified. Yet unlike such a stat-

ute, which typically provides a detailed list of factors to be considered by the court in determining whether pretrial detention is warranted,[10] the interim suspension provision of 12 U.S.C. § 1818(e)(4) vests the FDIC (or other federal banking agency) with extremely broad discretion to suspend bank officials pending the disposition of administrative removal proceedings against them. The statute provides only that:

> In respect to any director or officer of an insured bank ... the appropriate banking agency may, *if it deems it necessary for the protection of the bank or the interests of its depositors,* by written notice to such effect served upon such ... person, suspend him from office or prohibit him from further participation in any manner in the conduct or affairs of the bank ... pending the completion of the administrative [removal] process....

12 U.S.C. § 1818(e)(4) (emphasis added).

As far as the Court has been able to determine, the FDIC has taken no steps to provide either its own employees or federal courts reviewing interim suspension orders pursuant to 12 U.S.C. § 1818(f) with any guidance concerning the use of the agency's discretion under § 1818(e)(4).[11] The FDIC has not published regulations or other guidelines setting out standards or criteria to be employed in determining when an interim suspension order is necessary or appropriate. Nor is the suspension order in this case very illuminating: it merely lists a few allegations generally parrotting

---

**8.** To establish that preliminary injunctive relief is appropriate, plaintiff must show: (1) that he enjoys a substantial likelihood of success on the merits; (2) that absent such relief he will suffer irreparable injury; (3) that the requested relief will not substantially harm other parties to the litigation; and (4) that the public interest favors the granting of the requested relief. See *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). See also, *Foundation on Economic Trends v. Heckler,* 756 F.2d 143, 151 (D.C.Cir.1985).

**9.** Neither of the parties has located a § 1818(f) stay case in which the court discussed the applicable standard for granting a stay under that

statute. Nor has the Court found such a decision. The parties appear to agree, however, that *Virginia Petroleum Jobbers* supplies the appropriate test for determining whether the statutory stay remedy is appropriate. The Court agrees, subject to the caveats noted in Section III–C, *infra.*

**10.** See, *e.g.,* 18 U.S.C. § 3142(e), (f), (g).

**11.** In response to the Court's inquiry at oral argument, neither counsel for plaintiff nor counsel for the FDIC could identify any interpretive regulations or guidelines published by the agency. Nor have the Court's own researches uncovered such guidelines.

the statutory language, without in any way explaining the basis for the FDIC's determination that a § 1818(e)(4) interim suspension is warranted in this case. There is no comparison of this case to other cases or explanation of how and why the FDIC arrived at its decision to issue the interim suspension order (as distinguished from an order under subsection (e)(2) which contemplates removal of the officer after the completion of the administrative proceedings).

■ One of the most elementary principles of judicial review of discretionary agency action is that the agency must provide a statement of reasons that is sufficiently detailed to permit a reviewing court to determine whether that discretion was exercised properly. See *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443; *International Ladies' Garment Union v. Donovan,* 722 F.2d 795, 814 (D.C.Cir. 1983). It will not do to insist, as the FDIC does, that the statute simply commits interim stay decisions to the agency's unfettered discretion, which is exercised on the basis of the FDIC's banking expertise. If that were so, judicial review under 12 U.S.C. § 1818(f) would be little more than a formalistic exercise in which the reviewing court would simply determine that the FDIC had properly performed the ministerial tasks of issuing the required notices and then defer to the FDIC's discretionary decision to issue the interim suspension order.[12] The Court cannot conclude that Congress enacted § 1818(f), explicitly providing for prompt judicial review of interim suspension orders, to require only the illusion of judicial review and protection of a plaintiff's due process rights. Congress cannot be presumed to have engaged in a futile gesture in enacting the § 1818(f) stay

provision. Cf. *United States v. Republic Steel Corp.,* 362 U.S. 482, 492, 80 S.Ct. 884, 890, 4 L.Ed.2d 903 (1960); *Wilderness Society v. Morton,* 479 F.2d 842, 877 (D.C.Cir. 1973). Rather, Congress must have intended that the court in a § 1818(f) stay proceeding conduct a meaningful inquiry into the merits of the FDIC's exercise of its discretion.

The Court intends to fulfill that congressional intent. As noted (and as will become apparent in the discussion, *infra*), its task has been made significantly more difficult by the FDIC's failure to provide *any* basis for determining how and why it exercised its discretion in issuing the § 1818(e)(4) interim suspension order.[13]

### B.

■ Turning to the merits of plaintiff's stay request, the first requirement in establishing the appropriateness of preliminary injunctive relief is that the plaintiff demonstrate a substantial likelihood of success on the merits. See *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). In support of his contention that he is likely to prevail on the merits in the pending FDIC administrative proceeding, plaintiff asserts two factual arguments and one legal argument. His first factual argument, which is supported by uncontradicted affidavits, is that the FDIC's charge that plaintiff improperly approved a $250,000 _____ Bank loan to an entity known as _____ in violation of state banking law, must fail because he neither knew nor approved of the loan before it was made and opposed it after he learned it had been made. His second factual argument is that other allegedly improper loans, which the FDIC examiners forced the Bank to write off as losses, in fact were not dangerous to

---

**12.** It should be noted that the question of when the FDIC should and does seek to issue interim suspension orders is not one committed to the agency's unreviewable prosecutorial discretion. The § 1818(f) stay procedure clearly contemplates judicial scrutiny of the interim suspension order to determine if its imposition is appropriate.

**13.** It would obviously be helpful if the FDIC undertook the promulgation of some standards against which it takes steps, so as to provide reviewing courts with a more adequate basis for determining whether the agency has properly exercised its discretion in ordering an interim suspension.

the bank's financial health and have been substantially repaid, with interest.[14] Finally, plaintiff contends that the FDIC's notice of intent to conduct administrative proceedings to prevent him from serving as an officer or director of *any* federally insured bank exceeds its authority under § 1818(e), which speaks of removal proceedings with respect to specific, individual banks.[15]

The FDIC has not proffered specific facts to dispute plaintiff's factual contentions, although it has noted that the alleged repayments of the loans classified as "losses" may reflect nothing more than the improper shifting of assets, which can be determined during the bank's upcoming quarterly examination. The FDIC has argued, however, that the alleged "loss" loan repayments are legally irrelevant, and that the broad notice of intent to remove is permissible under the FDIC's enabling legislation and reflects consistent FDIC practice. Accordingly, the FDIC contends that, even if plaintiff is correct about the AMI loan and the other alleged loan repayments—and it does not concede this—he is unlikely to prevail on the merits and therefore is not entitled to relief.

After carefully considering the submissions of the parties, the Court concludes that, although it is a close case, plaintiff has demonstrated a sufficient probability of success on the merits to satisfy that prerequisite for preliminary injunctive relief. The FDIC is correct that the alleged repayment of the "loss" loans is not dispositive, since the initial classification was presumably made on the basis of objective standards for evaluating the safety of loans and since subsequent partial repayment of an insufficiently secured or collateralized loan does not vitiate the initial determination that the loan was imprudent when made and that the bank has therefore suffered a significant injury. Cf. *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). It is also true, however, that the statute grants to the federal banking agency involved broad discretion to determine both the appropriateness of issuing a suspension or removal order and the scope of any such order.[16]

If plaintiff is able to sustain his as yet uncontradicted factual claims that the FDIC is incorrect about the loan and that the other loans have been substantially repaid, the agency might well conclude either that disciplinary action is unwarranted, or that the disciplinary action should be much more limited than the broad ban on participation in banking affairs contemplated by the FDIC notices of removal and interim suspension order.[17] That being so, the Court feels compelled to conclude on the basis of the presently available evidence [18] that plaintiff has demonstrated a sufficient probability of success on the merits to satisfy the prerequisite for injunctive relief.

**14.** Plaintiff contends that all but $37,000 of the $250,000 loan has been repaid; that the so-called _____ loan has been repaid in full, with interest; and that the _____ Bank has since March 1985 collected approximately $950,000 of the _____ the FDIC required the bank to write off. Plaintiff's Affidavit at 7–8.

**15.** See *supra* notes 3 and 4. As explained *infra,* the Court has concluded that it need not decide this issue, and it accordingly will not elaborate thereon.

**16.** Section 1818(e)(5) of Title 12, U.S. Code, provides that if an appropriate federal banking agency "shall find that any of the grounds specified in such notice [of intent to remove] have been established, the agency *may issue such orders* of suspension or removal from office, or prohibition from participation in the conduct of the affairs of the bank, *as it may deem appropriate.* " 12 U.S.C. § 1818(e)(5) (emphasis added).

**17.** It is also possible—although it seems highly unlikely—that the FDIC will conclude that plaintiff is correct that the FDIC lacks the authority to issue a broad order barring plaintiff from participating in the affairs of any federally insured bank.

**18.** The Court emphasizes that its determination is based on its assessment of the admittedly fragmentary evidence thus far produced in this case. This evidence consists largely of uncontested affidavits by the respective parties and their associates. The introduction of additional, or better, evidence would of course require the Court to re-evaluate its decision in light of any new information that might be brought to its attention.

## C.

The second prerequisite for preliminary injunctive relief is a demonstration of a likelihood of irreparable injury. *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. Plaintiff claims that, unless the FDIC's interim suspension order is stayed, compliance with that order will require him to forego any bank management activities during the anticipated nine to twelve month duration of the administrative proceedings, and that the result of this unsolicited sabbatical will be the destruction of his professional reputation and the end of a lifelong banking career. In addition to this generalized allegation of irreparable harm, plaintiff claims that he is currently involved in critical and delicate negotiations on behalf of two small banks [19] in precarious financial circumstances, and that compliance with the interim suspension order will result in significant harm to the banks and, concomitantly, to his professional reputation.

The FDIC observes, correctly, that reputational injury generally is not considered to be an irreparable injury sufficient to satisfy the requirement for injunctive relief. See, *e.g., Sampson v. Murray*, 415 U.S. 61, 89–92, 94 S.Ct. 937, 952–954, 39 L.Ed.2d 166 (1974). It is also obvious that the question whether compliance with the interim suspension order will result in serious harm to the two small banks is more properly considered in the context of the public interest considerations involved in this case.

Nevertheless, the Court concludes that the specific probability of severe and permanent injury to plaintiff's reputation, and the concomitant destruction of his career in his chosen profession of banking, constitutes an irreparable injury sufficient to satisfy the requirement for injunctive relief. The potential reputational injury here is more permanent and severe than that in *Sampson, supra.* Moreover, it is hard to imagine what other sort of injury Congress had in mind in enacting the § 1818(f) stay provision, which presumably was intended to provide affected bank executives with a means of preventing injury to their careers from unwarranted interim suspension orders.[20] The Court therefore concludes that plaintiff's allegation of irreparable injury is sufficient to satisfy that requirement under the statute.

## D.

The third issue to be considered in assessing the appropriateness of preliminary injunctive relief is whether the requested relief will prejudice any of the other parties to the litigation. See *Virginia Petroleum Jobbers Ass'n, supra.* The FDIC does not contend, nor could it, that a grant of the requested stay would significantly prejudice it in the pending administrative removal proceeding, which is entirely separate from this one. To be sure, the FDIC does contend that the issuance of a stay would prejudice it in that it would prevent the agency from fulfilling its statutory mission of protecting bank depositors and investors from dangerous banking practices.[21] However, such prejudice is not prejudicial to the FDIC's administrative litigation position, or to the agency itself, and is more properly considered in the evaluation of the public interest implications of the requested stay, to which the Court now turns.

---

19. The two banks are the _____ Bank _____ on behalf of the stockholders of which plaintiff is negotiating the sale of the bank, and the _____ Bank, of which plaintiff is the chief executive officer and for which he is preparing a change of control application.

20. Indeed, in this regard the Court notes that the statute explicitly provides that administrative hearings in cases such as this "shall be private, unless the appropriate federal banking agency, in its discretion, after fully considering the views of the party afforded the hearing, determines that a public hearing is necessary to protect the public interest." 12 U.S.C. § 1818(h)(1). This statutory presumption in favor of private hearings is a further indication of congressional recognition of the extremely sensitive nature of such proceedings and their potential for inflicting severe and possibly unwarranted injury on the affected party's reputation.

21. It should also be noted that the FDIC does *not* claim that plaintiff is in any way guilty of personal dishonesty.

## E.

The final, and most crucial, factor to be assessed in determining whether injunctive relief is warranted is whether such relief would be consistent with the public interest. *Id.* As noted previously, see *supra* Part III–C, plaintiff claims that compliance with the interim suspension order will prevent him from managing, and completing sensitive negotiations on behalf of, two banks for whose affairs he is primarily responsible, with the result that depositors and shareholders in those banks may consequently suffer significant financial losses.[22] Thus, he claims that the FDIC's interim suspension order will, paradoxically, cause precisely the sort of injury to the public interest that it is presumably intended to prevent.

Nothing in the FDIC's interim suspension order, or in its subsequent submissions to the Court, indicates to what extent, if any, the FDIC has considered the possible effect of its order on the interests of depositors and shareholders in these two banks. The interim suspension order broadly bars plaintiff from participation in the affairs of *any* federally insured bank. It does not indicate that the FDIC has weighed the relative dangers of permitting an individual alleged to have participated in a pattern of unsafe and unsound banking practices to continue to manage banks in delicate financial circumstances against those of leaving such banks without an experienced, knowledgeable manager familiar with their affairs. It may be that the FDIC believes that plaintiff's record is so egregious that the danger of permitting him to participate in any way in the affairs of any bank far outweighs any benefits of familiarity or expertise he could provide.[23] But on this

record it appears more likely that the FDIC simply failed to weigh the potential costs and benefits of permitting plaintiff to continue to participate in the affairs of the various banks with which he is involved pending the outcome of the administrative proceedings against him.[24] Accordingly, the Court has no evident basis for determining whether the FDIC has properly exercised its expert discretion to protect the public interest in maintaining the security and solvency of the banks with which plaintiff is involved.

## F.

■ As the preceding analysis indicates, the FDIC's failure to provide an explanation of the factors that led it to order plaintiff's interim suspension from participation in the affairs of federally insured banks pending the outcome of the administrative proceedings against him necessarily precludes the Court from determining even with minimum certainty where the equitable balance lies in this case. In such circumstances, the most appropriate course is a remand to the FDIC to permit it either to explain more fully the rationale for its decision, or even to reconsider the appropriateness of its order in the light of plaintiff's allegations concerning the critical situation at the two banks in whose affairs he is so deeply involved. This approach properly defers to the FDIC's acknowledged expertise in banking matters, see *Mid America Bancorporation, Inc. v. Board of Governors*, 523 F.Supp. 568, 576 (D.Minn. 1980), and it will also achieve the salutary purpose of providing the Court with a reasoned explanation of the FDIC's decision that will permit the Court to undertake a

---

**22.** It should also be noted that, since the FDIC insures depositors' accounts at federally insured banks, the FDIC would necessarily sustain a substantial portion, if not the lion's share, of any loss caused by the bank's failure. Thus, the public interest considerations in this case include the American public's interest in safeguarding the FDIC insurance fund.

**23.** For example, FDIC Regional Director _____ has indicated in his affidavit that he believes that plaintiff's allegedly improper loan

practices have placed the Bank at the brink of bankruptcy. _____ Affidavit at 5; see also, _____ Affidavit at 1–2.

**24.** At oral argument, counsel for the FDIC indicated in response to the Court's inquiry that it is the FDIC's consistent practice to issue blanket interim suspension orders such as that involved here when it issues such orders. This suggests that the FDIC does not engage in consideration of the individual circumstances of each bank in drafting its interim suspension orders.

meaningful review of that decision. See *supra* Part III–A.

The remaining question is how properly to achieve such a remand. The Court concludes that the purposes of a remand will best be served if the FDIC is permitted to reconsider its interim suspension decision in its entirety, so that it has the maximum possible freedom to tailor precisely any interim suspension order necessary to protect any of the banks with which plaintiff is affiliated or the interests of their depositors.[25] Accordingly, finding that the available evidence warrants at least a temporary stay of the FDIC's interim suspension order, the Court will issue a temporary restraining order pursuant to 12 U.S.C. § 1818(f) suspending the FDIC's interim suspension order for ten days. However, nothing in the TRO shall be construed to limit the FDIC's authority to issue within that period interim suspension orders suspending plaintiff from participation in the affairs of specified banks based upon the FDIC's determination that such an interim suspension order is necessary to protect those banks or their depositors. Any such new interim suspension orders will, of course, be subject to the stay provisions of § 1818(f), and the Court will retain jurisdiction to review any such orders pursuant to those provisions.

### IV

There remains the question whether, as plaintiff contends, the FDIC's interim suspension order prohibiting plaintiff from participating in the affairs of *any* federally insured bank exceeds the FDIC's authority under the statute. It appears that the Court's issuance of the temporary restraining order described above may well result in the abandonment of the original interim suspension order and in the issuance of new orders involving individual banks,

thereby rendering the question of the propriety of the original order moot. Accordingly, rather than issuing what might amount to an advisory opinion, the Court will instead defer resolution of this question to the time when (if ever) it becomes necessary to decide it.

### V

The Court has considered defendant's motions to transfer venue and to modify the Order sealing these proceedings, and plaintiff's motions for a temporary restraining order and a declaratory judgment. For the reasons stated above, defendant's motions will be denied; plaintiff's motion for a temporary restraining order will be granted, with the modifications noted by the Court; and the Court will defer decision on plaintiff's motion for a declaratory judgment. An appropriate Order will be issued simultaneously with this memorandum.

---

25. This is consistent with the familiar principle of administrative law that where there is substantial doubt that an agency intended various portions of its decision to be severable, a reviewing court should remand the entire decision so that it may be reconsidered as a whole. See *North Carolina v. FERC,* 730 F.2d 790, 795–96

(D.C.Cir.1984). The FDIC's blanket suspension order does not permit the Court to determine whether the FDIC made determinations with respect to specific banks that could properly be considered severable. Accordingly, a remand of the entire order is indicated.