James L. MAGEE, Plaintiff,

v.

Alan GREENSPAN, et al., Defendants.

Gaylon M. LAWRENCE, Sr., Plaintiff,

v.

Alan GREENSPAN, et al., Defendants.

Civ. Nos. 91–0868(HHG), 91–0869(HHG).

United States District Court,
District of Columbia.

May 16, 1991.

Jeffrey C. Gerrish, Gerrish & McCreary, Memphis, for plaintiff Magee.

Susan J. Bell, Newman & Holtzinger, Washington, DC, for plaintiff Lawrence.

Fred E. Haynes, Asst. U.S. Atty., Washington, DC, for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Farmers Bank and Trust in Blytheville, Arkansas, is a small community bank with approximately $111 million in total assets. Plaintiffs James Magee and Gaylon Lawrence Sr., have both worked for Farmers Bank since 1984, James Magee as Farmers Bank's Chief Executive Officer and Chairman of the Board; and Gaylon Lawrence, Sr. as a management consultant. James Magee controls 100% of Farmers Bank, either by ownership or as trustee.[1] Each plaintiff also owns or is otherwise involved with three other small banks in Arkansas and Missouri.[2]

On January 31, 1991, the Board of Governors of the Federal Reserve Board (Federal Reserve) conducted an examination of Farmers Bank. The examination revealed that over at least the prior three years, Mr. Magee directed payments to himself in excess of his salary and to Mr. Lawrence in excess of the amount authorized by his consulting contract with Farmers Bank. On April 11, 1991, plaintiffs were served

---

1. Magee owns 25% of the stock of Farmers Bancorp, Inc., the one bank holding company for Farmers Bank. The other 75% of the stock is held in a trust, of which Magee is the trustee, for Gaylon Lawrence's son, Gaylon Lawrence, Jr.

2. These banks are: Piggott State Bank of Piggott, Arkansas; First National Bank of Malden, Missouri; and First Missouri State Bank of Poplar Bluff, Missouri.

with notice, pursuant to 12 U.S.C. § 1818(e)(1), that the Federal Reserve was initiating administrative proceedings to remove each of them from their positions at the Farmers Bank permanently and that, pursuant to 12 U.S.C. § 1818(e)(7), the removal from Farmers Bank also would prohibit them from holding a position at any other federally insured bank. Furthermore, the Federal Reserve informed plaintiffs that, pursuant to 12 U.S.C. § 1818(e)(3), they were removed from participating in any federally insured bank immediately, pending administrative review of the suspension. An administrative hearing is set for both plaintiffs in early June of this year.

On April 18, 1991, plaintiffs filed suit to challenge review of the Federal Reserve's order of immediate suspension pending administrative review. 12 U.S.C. § 1818(f).[3] On April 22, after a hearing, this Court granted plaintiffs' motion for a temporary restraining order preventing the Federal Reserve from enforcing the suspension orders until this Court could undertake a more extensive review. That temporary restraining order was extended on May 6, 1991, at a hearing on plaintiffs' motion for preliminary injunction. Now after oral argument and briefing by all parties, the matter is ripe for this Court's review.

## I

The Federal Reserve has based its suspensions on two practices of plaintiffs. First, Mr. Magee, without approval from the board of directors of Farmers Bank, directed that he and Mr. Lawrence be paid in excess of his salary or contractual amount respectively, through the Bank's miscellaneous expense account. Second, on the Reports of Condition and Income (Call Reports), which are filed quarterly with the Federal Reserve, these excess payments were included in the category of "noninterest/nonemployee expenses", rather than as salaries.

The Federal Reserve asserts that since January of 1988, Mr. Magee directed payments to himself in the amount of $455,450 over his salary, and to Mr. Lawrence of $266,100 in excess of the payment set by his consulting contract.[4] In addition, the Federal Reserve asserts that Magee continued to make these payments to himself and Lawrence even after the Federal Reserve's bank examiners instructed him not to in mid-February of 1991, following the examination of Farmers Bank.

The Federal Reserve alleges that Magee ordered these payments to be made from Farmers Bank's miscellaneous expense account to hide them from the board of directors and from federal regulators because he knew that the "exorbitant" payments constituted unsound and unsafe banking practices. The Federal Reserve also alleges that Lawrence and Magee knew that the Federal Reserve would object to Lawrence being paid in excess of the amount set by his contract with Farmers Bank.[5]

The plaintiffs argue that the board of directors of Farmers Bank had delegated authority to its executive committee to set

3. Plaintiffs' complaints before this Court raise only the issue of whether the Federal Reserve may remove plaintiffs from Farmers Bank pending full administrative review of permanent suspension. Regardless of the outcome in this Court, the administrative review will proceed in early June, and if after administrative review plaintiffs are permanently removed from banking, they may challenge the administrative outcome in the Court of Appeals pursuant to 12 U.S.C. § 1818(h)(2).

4. During this time Magee earned about $135,000 annually in salary and bonuses and Lawrence earned about $100,000 annually in consulting payments and board meeting fees. Defendant's Exhibit 1.

5. This allegation is based on correspondence between Magee and the Federal Reserve in relation to the Federal Reserve's grant of approval for the one bank holding company structure in 1987. See infra note 8.

In addition, the Federal Reserve bases its allegations as to Lawrence on warnings Lawrence had previously received from the Federal Reserve in regards to other banks for which he had consulted, warning him that he could not receive consulting fees for work which he had not submitted documentation for or performed. See Defendant's Exhibit 4 (affidavit of Nancy Oakes).

executive compensation and that a majority of the executive committee knew that Magee and Lawrence were being paid out of the miscellaneous expense account even if the exact amount of the compensation was not known. Also, plaintiffs argue that the board of directors was made aware of the amounts of payment immediately after the Federal Reserve instructed them that the board of directors should approve all salaries of executives of the Farmers Bank. Furthermore, plaintiffs assert that in February of 1991, the bank examiners only told them to make the amount and method of payments known to the board of directors and never informed them that the payments were to be stopped. Magee does not really attempt to explain the Call Reports, but merely asserts that they were properly and lawfully submitted.[6]

## II

■ Generally, when reviewing an exercise of discretionary action by a federal agency, the Court may only overturn the agency's decision if after a review of the record, the agency's decision is found to be arbitrary or capricious. *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Investment Co. Institute v. FDIC*, 815 F.2d 1540, 1550 (D.C.Cir. 1987). In the instant cases, the Court concludes, based on the suspension orders issued by defendant and its explanatory affidavits filed in this proceeding, *see Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 282–85 (D.C.Cir.1981), that the Federal Reserve has made a reasoned decision. However, because these plaintiffs have also filed for preliminary injunctions, and based on prior precedent of this Court in regards to the instant statute, the Court also bases its conclusion that plaintiffs' motions must be denied on the evaluation that they have failed to establish the showing required for injunctive relief.

## III

This Court has had prior occasion to interpret the instant statutory provisions in the cases of *Anonymous v. FDIC*, 619 F.Supp. 866 (D.D.C.1985) and *Anonymous v. FDIC*, 617 F.Supp. 509 (D.D.C.1985). In these cases, a banking official challenged his removal by the Federal Deposit Insurance Corporation. This Court, faced with a lack of precedent on the issue, held that to obtain a stay of a suspension order, pursuant to 12 U.S.C. § 1818(f), the plaintiff must satisfy the same requirements as for relief on a preliminary injunction. *Anonymous*, 617 F.Supp. at 513. The statutory provisions have somewhat changed since this Court's prior decisions, but there is still no other precedent to guide the discussion. In the instant cases, because plaintiffs have filed motions for a preliminary injunction, the determination of the motions for preliminary injunction become the same as determinations of the complaints on the merits to which the Court now turns.

■ The traditional requirements of a preliminary injunction which the plaintiff must show in order to obtain relief are: a strong showing that plaintiff is likely to prevail on the merits; irreparable harm if the injunction is not granted; whether the injunction will work irreparable harm on others; and whether the public interest favors relief. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958). As detailed below, the plaintiffs cannot make this showing and therefore the motions for preliminary injunction must be denied.

### A. Likelihood of success on the merits

■ The statute at issue, 12 U.S.C. § 1818(e)(1), as applicable to these cases, requires that before permanent removal the Federal Reserve show three things: (1) that plaintiffs engaged in an unsafe or unsound practice or violated a law or regulation; (2) that due to the violation the

---

**6.** Plaintiffs do submit an affidavit from Steve Bell, the Vice President of Farmers Bank, who apparently prepared the Call Reports. He asserts that he completed the Call Reports based on audits prepared by an accountant for Farmers Bank and that there was no intentional misrepresentation of expenses.

plaintiffs have personally gained, or the Farmers Bank has suffered a loss; and (3) that in committing the violation, the plaintiffs were engaged in personal dishonesty or showed a willful and continuing disregard for the soundness of the bank. In addition, in order to get a suspension pending administrative review, the Federal Reserve must show that the suspension "is necessary for the protection of the depository institution or the interests of the depository institution's depositors." 12 U.S.C. § 1818(e)(3).

Although plaintiffs contend that they are likely to prevail on the merits at an administrative hearing because the Federal Reserve will not be able to make such a showing, the Court is not so convinced. Plaintiffs insist that the amount of the payments is not an unsafe or unsound practice and that they were not attempting to hide the payments from anyone.[7] What plaintiffs are unable to explain is why, if these payments were completely ethical and lawful, they were placed in the miscellaneous expense category rather than a more logical category such as salary or bonuses. Furthermore, in his filings on the instant motion, Magee does not explain the misreporting on the Call Reports. Also undisputed is the fact that Lawrence accepted payments from the Bank through his friend and business partner Magee, even though he knew the payments were in excess of the amount he was to be paid under contract and that the board of directors had not approved the payments.

The requirement of a loss to the bank or a gain to the plaintiffs is easily proved by the Federal Reserve; clearly plaintiffs benefited from the large payments Magee directed they be paid from Farmers Bank. The third requirement of the statute, of plaintiffs' dishonesty, is shown by the fact that these large self-directed payments were not disclosed to the board of directors of Farmers Bank nor to the Federal Reserve.[8]

Although whether immediate suspension is necessary for the protection of the depositors of Farmers Bank is a slightly closer issue, plaintiffs have failed to show that the Federal Reserve was arbitrary or capricious in reaching its decision to immediately suspend them. Plaintiffs argue that the depositors are protected from any possible harm by the cease and desist orders in force against Farmers Bank which prevent the Bank from paying more than $200 out of the expense account to anyone without written approval from the Federal Reserve.[9] However, the Federal Reserve has made a strong showing, through its affidavits in explanation of the suspension orders, that the cease and desist orders are not adequate protection for the simple reason that they are not self-enforcing. In other words, the cease and desist orders impose extra penalties on Farmers Bank for violation, but do not prevent Mr. Magee from writing checks to himself, wiring money from the bank or taking other actions that would harm the depositors of Farmer Bank. Finally, the Federal Reserve alleges that plaintiffs have a strong incentive to "extract" money from the other banks which they manage or own that are not under cease and desist orders, because there is a strong possibility that af-

---

**7.** In support of this, plaintiffs state that the board of directors, at a March 14, 1991 meeting, approved a 1991 salary for Magee and payments for Lawrence in about the amount they were being paid in total in 1988, 1989 and 1990; including payments for "unallocated expenses" which presumably were to be paid from the miscellaneous expense account.

**8.** The Federal Reserve also bases its allegation of dishonesty on the circumstances surrounding the approval by the Federal Reserve of the one bank holding company for Farmers Bank. Before the Federal Reserve would approve the one bank holding company structure, Magee was required to set down in a contract the employ-ment terms of Lawrence. That contract sets Lawrence's compensation at $96,000 per year plus $400 per board of director's meeting he attended and authorizes no other compensation. Therefore, the Federal Reserve alleges that Magee and Lawrence knew that approval of the bank holding company arrangement was conditioned on Lawrence's contract, and therefore both plaintiffs knew that paying Lawrence in excess of what the contract allowed was dishonest.

**9.** Plaintiffs have submitted affidavits from other officers of Farmers Bank stating that the cease and desist orders would be obeyed and not challenged in court.

ter the administrative hearing plaintiffs will be permanently prohibited from holding positions in federally insured banks.

In the instant cases, as discussed above, the Court concludes that the suspension orders, along with explanatory affidavits submitted by the Federal Reserve, are sufficient to show that the Federal Reserve made a reasoned decision that immediate suspension is necessary for the protection of the depositors of Farmers Bank. In addition, the Court concludes that plaintiffs are not likely to succeed on the merits of the administrative proceeding. In sum, plaintiffs have failed to show a strong likelihood of success at the administrative hearing nor have they shown that the Federal Reserve's decision to remove them was arbitrary or capricious.

### B. Irreparable harm to be suffered by the plaintiffs

Plaintiffs allege that their reputations in the community will be irreparably harmed if the suspension orders are not stayed, and they are forced out of their positions in all federally insured banks pending administrative review. Plaintiffs have submitted affidavits attesting to their currently good reputation in the community and emphasize that in their small community, their careers as bankers will be ruined quickly if the suspension orders stand. In *Anonymous*, 617 F.Supp. at 516, this Court recognized that reputational injury is generally insufficient to support a finding of irreparable harm to support injunctive relief, *see, e.g., Sampson v. Murray*, 415 U.S. 61, 89–92, 94 S.Ct. 937, 952–954, 39 L.Ed.2d 166 (1974), but held that in the circumstances presented by the stay of a suspension order, a plaintiff who alleged irreparable injury to his reputation and ability to continue in his profession as a banker had stated injury sufficient to satisfy this requirement. This conclusion however, was based, at least in part, on the fact that at that time the statute required that the administrative proceedings be closed to the public. Therefore, at the time of the *Anonymous* cases, if the plaintiff challenging the suspension

order had prevailed at the administrative level, no one in the community would have known that his actions had been called into question by the federal banking authorities.

The statute has since been amended so that the administrative proceedings are open to the public unless it is shown that an open hearing would not be in the public interest. 12 U.S.C. § 1818(u). The Federal Reserve has refused plaintiffs' request for a closed hearing in the instant cases.[10] Therefore, in regards to these plaintiffs, the community will know in June, when the administrative proceedings begin, that their conduct has been questioned. Also, at that time, plaintiffs will have the opportunity to defend their actions at a proceeding open to the public.

Plaintiffs contend that because they have elected to have the administrative hearing conducted in Washington, D.C., rather than Jonesboro, Arkansas, the community in Arkansas will still not know about the proceedings as long as plaintiffs are not suspended from Farmers Bank. It is questionable, as a factual matter, whether the public would be more aware of an administrative proceeding because it took place closer to their homes. In any event, this fact is irrelevant, because the change in the statute shows that Congress has shifted the balance of interests towards public disclosure rather than protection of banking executives accused of wrongdoing.

The plaintiffs, therefore, have failed to show irreparable harm which, in itself, is enough to defeat their request for a preliminary injunction.

### C. Irreparable harm to others and the public interest

Plaintiffs argue that the public interest favors the stay because Farmers Bank is currently in a sound financial condition. Furthermore, plaintiffs allege that their suspensions will harm Farmers Bank because the Bank will be left without anyone to manage its investment portfolio which contains half of the bank's assets. Plain-

---

**10.** *See* Defendant's Exhibit 12.

tiffs also allege that the other banks they assist in managing will similarly be left without competent management.

The Federal Reserve has asserted that Farmers Bank and the banks for which plaintiffs provide services have other people that can manage them effectively without the plaintiffs.[11] In addition, the Federal Reserve convincingly argues that the public interest favors keeping dishonest people out of positions of trust in banks.

## IV

In conclusion, in the instant cases, the Federal Reserve has not only alleged, but has produced credible evidence that over a period of at least three years, these two plaintiffs were responsible for hundreds of thousands of dollars of payments to themselves which were not authorized by the Bank's board of directors and which, if not deliberately hidden from the Federal Reserve, were at least reported so as to make them extremely difficult to ascertain.[12] In these circumstances, the Court concludes that the Federal Reserve has made a reasoned decision to remove the plaintiffs from positions of public trust; a decision which may not be disturbed by this Court on the current record.

Therefore, in accordance with Orders which will be issued simultaneously herewith, plaintiffs' request for a stay and their motions for preliminary injunction will be denied.

## ORDER

Upon consideration of plaintiff's motion for a preliminary injunction and the opposition thereto, in accordance with a Memorandum Opinion issued simultaneously herewith, it is this 16th day of May, 1991,

ORDERED that plaintiff's motion for a preliminary injunction be and it is hereby denied; and it is further

11. See Defendant's Exhibit 7 (affidavit of Herbert Biern).

12. The instant cases are significantly different from the situation presented by the Anonymous cases, where this Court issued a stay because "there [was] no allegation of dishonesty, habitu-

ORDERED that plaintiff's request for a stay of defendant's suspension order be and it is hereby denied; and it is further

ORDERED that the temporary restraining order issued against defendant on April 22, 1991, prohibiting defendant from enforcing its suspension order against plaintiff, be and it is hereby vacated; and it is further

ORDERED that the April 19, 1991 Order of this Court sealing the record shall not prevent the administrative law judge in the administrative proceeding concerning plaintiff from having access to the record in the instant case.

ally disastrous banking practice, or any other type of misconduct that might indicate the plaintiff will constitute a serious threat ... pending resolution of the administrative action." *Anonymous,* 619 F.Supp. at 874.