**TENACRE FOUNDATION, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE of the United States, et al., Defendants.**

**Civ. A. No. 95–945 SSH.**

United States District Court,
District of Columbia.

July 13, 1995.

---

2. It appears that there is only one Director of the Department of Housing and Community Development.

Lawrence P. Lataif, Sr., Fort Lauderdale, FL, Washington, DC, for plaintiff.

Marina U. Braswell, Asst. U.S. Atty., Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter comes before the Court on plaintiff's motion for a preliminary injunction. The Court finds that, although plaintiff has shown a significant likelihood of success on the merits, plaintiff has not shown that it will suffer any irreparable harm absent preliminary injunctive relief. Plaintiff's motion for a preliminary injunction is therefore denied.

## I. BACKGROUND

Plaintiff Tenacre Foundation ("Tenacre") is a Christian Science facility located in Princeton, New Jersey. Tenacre was founded in 1935; in 1941, Tenacre expanded its facilities to include a school of Christian Science nursing. A Christian Science nurse is not a nurse in the medical sense of the word. Rather, a Christian Science nurse is engaged in a religious ministry, characterized by religious service and the spiritual healing of the ill. Thus, Tenacre selects its nurses not based on any prior technical medical experience, but based upon a demonstrated commitment to the Christian Science faith and to the tenets of Christian Science nursing. Tenacre selects its nurses from members of the First Church of Christ, Scientist, some of whom are foreign nationals.

On May 17, 1993, plaintiff filed with the Immigration and Naturalization Service ("INS") a Form I–129 Petition for a Nonimmigrant Worker. Plaintiff sought a status change for James Kihu, a native of Kenya, from an F–1 student visa to an R–1 nonimmigrant religious worker visa. Plaintiff re-

quested the status change so that Kihu could "continue his on-the-job training in the religious occupation of Christian Science nursing, while concurrently continuing his extensive preparation for becoming a Christian Science nurse." Administrative Record (hereinafter "A.R.") at 165. Kihu had been employed with Tenacre for almost a year prior to Tenacre's petition for status change. The Director of the INS Eastern Service Center ("ESC") denied plaintiff's petition on June 28, 1993, taking the position that Kihu was "training" to be a Christian Science nurse and was therefore not "fully qualified" for the religious occupation he was to enter into at Tenacre. A.R. at 155.

Plaintiff twice moved the ESC to reopen and to reconsider the June, 1993, determination, each time providing new affidavits of persons affiliated with the Tenacre facility, including the president of Tenacre, regarding Kihu's status and role at Tenacre.[1] A.R. at 132–33. Plaintiff's July, 1993, petition to reopen and to reconsider was granted, but the Director affirmed his June, 1993, decision. The Director again concluded that plaintiff "was seeking the beneficiary as a trainee," that plaintiff therefore was not yet "fully qualified" to be a Christian Science nurse, and that the INS regulations applicable to applicants for an R–1 visa required a showing that the applicant be "qualified to perform the duties of the traditional religious occupation." A.R. at 130. Since the Director determined Kihu to be a "trainee," it was concluded that Kihu could not qualify for an R–1 visa under the applicable INS regulations. *Id.*

Plaintiff's November, 1993, motion to reopen and for reconsideration likewise was granted, but the decision to deny Kihu an R–1 visa again was affirmed. On December 9, 1993, the Director of the ESC again determined that Kihu had not yet "become a Christian Science nurse" and that Kihu must be "fully qualified to perform the duties of a traditional religious occupation" before he was eligible to receive an R–1 visa. A.R. at 40. The December, 1993, decision of the ESC was certified to the Administrative Appeals Unit ("AAU") of the INS, and in September, 1994, plaintiff requested an expedited decision in the case of Kihu's application. A.R. at 24.

On October 11, 1994, the AAU affirmed the decision of the ESC and denied Tenacre's petition for an R–1 visa for Kihu. The AAU rather inexplicably determined that Kihu "did not qualify as a nurse" and "would not be working in an active religious role," because Tenacre's visa petition "was filed to employ the beneficiary as a nurse's aide." A.R. at 3. Additionally, or perhaps alternatively, the AAU determined that "the offered position of nurse's aide ... does not qualify as a religious occupation which relates to a traditional religious function." A.R. at 4.

On May 19, 1995, plaintiff filed this suit against the INS. Plaintiff alleged in its complaint that the INS adopted unlawful regulations and interpreted those regulations so as preclude entry-level Christian Science nurses from obtaining R–1 visas, in violation of section 209 of the Immigration and Nationality Act, 8 U.S.C. § 1101 (Supp.1995) ("INA"), the Religious Freedom Restoration Act of 1993, Pub.L. No. 103–141, 107 Stat. 1488 (1993) ("RFRA"), the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the First and Fifth Amendments to the Constitution. Plaintiff challenges one regulation in particular, § 8 C.F.R. § 214.2(r)(3)(ii)(C)(3), contending that the regulation in effect imposes a prior qualification requirement upon an applicant for an R–1 visa, which requirement does not exist in the INA.

On June 14, 1995, plaintiff filed a motion for preliminary injunction. Defendants filed an opposition in the form of a motion for summary judgment on June 30, 1995. Plaintiff filed a reply on July 6, 1995, requesting an extension of time within which to file its opposition to defendant's motion for sum-

---

1. While Tenacre in its initial petition for an R–1 visa had included as a part of its voluminous filing a two-page description of the duties of a "Christian Science Nurse's Aide," later affidavits from the president of Tenacre and from the director of the Nursing Program at Tenacre specifically stated that no "nurse's aide" position existed within the Nursing Program, and that Kihu was serving not as a "nurse's aide," but as an entry-level Christian Science nurse.

mary judgment until twenty days after the Court's decision on its motion for a preliminary injunction. The Court held a hearing on plaintiff's motion for a preliminary injunction on July 7, 1995.

## II. ANALYSIS

■ Injunctive relief is an extraordinary remedy, and the party seeking it bears a substantial burden. *American Coastal Line Joint Venture v. United States Lines, Inc.,* 580 F.Supp. 932, 935 (D.D.C.1983). This Circuit has adopted a four-part test to determine whether a preliminary injunction should be granted. Plaintiffs must demonstrate that (1) they are likely to prevail on the merits; (2) they will suffer irreparable harm absent the injunction; (3) an injunction would not substantially impair the rights of the defendants or other interested parties; and (4) an injunction would be in the public interest, or at least would not be adverse to the public interest. *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir. 1989); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 842–44 (D.C.Cir.1977).

### A. *Likelihood of Success on the Merits*

Section 101(a)(15)(R) of the INA provides that an alien may be classified as a "nonimmigrant alien" and receive a temporary R–1 visa if he or she

(i) for the 2 years immediately preceding the time of application for admission has been a member of a religious organization having a bona fide nonprofit, religious organization in the United States; and

(ii) seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph 27(C)(ii).

The three subclauses referred to in § 1101(a)(15)(R), codified in 8 U.S.C. § 1101(a)(27)(C)(ii), provide that an immigrant may be classified as a special immigrant admitted for permanent residence in the United States if he has been a member for two years or more of a religious denomination having a bona fide nonprofit, religious organization in the United States and if he seeks to enter the United States

(I) solely for the purpose of carrying on the vocation of a minister of that religious denomination;

(II) before October 1, 1997, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation; or

(III) before October 1, 1997, in order to work for the organization ... at the request of the organization in a religious vocation or occupation.

In addition to these requirements, an immigrant may only be classified as a special immigrant eligible for permanent residence under 8 U.S.C. § 1101(a)(27)(C)(ii) if that person also has been practicing his religious vocation or professional work continuously for the two-year period preceding his application. 8 U.S.C. § 1101(a)(27)(C)(iii). This extra requirement is not present in 8 U.S.C. § 1101(a)(15)(R), the statute applicable to temporary R–1 visas; for an applicant to obtain an R–1 visa, the statute requires only that the applicant be a member of a recognized religious organization for more than two years, and that the applicant be coming to the United States for a period of five years or less, to work "in a religious occupation or vocation." These two provisions— § 1101(a)(15)(R) and § 1101(a)(27)(C)(ii)— were simultaneously passed by Congress as part of the Immigration Act of 1990.

The INS has promulgated regulations applicable to the Immigration Act of 1990 and to the issuance of R–1 visas. 8 C.F.R. § 214.2(r)(3) (1995) provides that an alien seeking classification as a nonimmigrant religious worker must present evidence showing, first, that the alien will be performing services for a bona fide nonprofit religious organization, and second, that the alien meets the criteria to perform such services.

More specifically, § 214.2(r)(3)(ii)(C)(3) provides that the organization seeking to employ the alien must show (among other things) that "if the alien is to work in another religious vocation or occupation, he or she is qualified in the religious vocation or occupation. Evidence of such qualifications may include, but need not be limited to, evidence establishing that the alien is a monk, nun, or

religious brother or that the type of work to be done relates to a traditional religious function...." [2]

The Director of the ESC relied on 8 C.F.R. § 214.2(r)(3)(ii)(C)(3) when he denied Tenacre's request for a status change for James Kihu, finding that since Kihu was not a full-fledged Christian Science nurse, but was only an entry-level nurse or "trainee," Kihu was not eligible for an R–1 visa. Kihu was not eligible, the Director held, because he was not "fully qualified" to be a Christian Science nurse. A.R. at 155; A.R. at 130; A.R. at 40.

Plaintiff contends that § 214.2(r)(3)(ii)(C)(3) creates, in effect, a new requirement on top of those set forth in the statute: not only must the applicant for an R–1 visa have been a member of a recognized religious entity for at least two years, and not only must the applicant comply with one or more of the three subclauses in § 1101(a)(27)(C)(ii), but the applicant must also be "fully qualified" for the religious occupation or vocation he wishes to practice in the United States. Plaintiff argues that by requiring an applicant for an R–1 visa to be "fully qualified" to practice his religious occupation or vocation, the INS has rendered the requirements for an R–1 visa and those for a permanent special immigrant visa virtually indistinguishable from each other.

■ The Court is inclined, at this stage, to agree. The starting point in construing a statute is the language of the statute. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). When the statute's meaning is clear, an agency is held to that meaning and cannot promulgate regulations that thwart the meaning of the statute and the intent of Congress. *Eagle–Picher Industries, Inc. v. E.P.A.*, 759 F.2d 922, 927 (D.C.Cir.1985). "If the statute is silent or ambiguous with re-

spect to the specific issue," courts afford deference to the statutory interpretation of an agency charged with administering the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). "[T]he question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; 104 S.Ct. at 2782.

■ The INS contends that 8 C.F.R. § 214.2(r)(3)(ii)(C)(3) was promulgated in reliance upon the phrase contained in § 1101(a)(15)(R): "in a vocation or occupation." The INS asserted at oral argument that its regulations requiring an applicant to be "qualified" for a religious vocation or occupation reflect the INS's interpretation of the statute's requirement that the applicant be working "in a vocation or occupation," and that if the applicant were merely training for the vocation or occupation, the applicant could not be working "in the vocation or occupation." The INS's interpretation of the phrase "in a vocation or occupation" is entitled to deference unless it is "arbitrary, capricious, or manifestly contrary to the statute." 5 U.S.C. § 706(2); *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–14, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971); *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. The Court is reluctant to give deference to the INS's interpretation in this case, especially when 8 C.F.R. § 214.2(r)(3)(ii)(C)(3) is compared to the special immigrant provisions passed at the same time as those provisions applicable to temporary R–1 visa-seekers.

In the special immigrant provisions, Congress specifically included the requirement that the applicant for a permanent visa have been "carrying on" his vocation or occupation for at least two years immediately prior to his application. 8 U.S.C.

---

**2.** A "religious occupation" is defined in INS regulations as "an activity which relates to a traditional religious function. Examples of persons in religious occupations include ... workers in religious hospitals or religious health care facilities...."
8 C.F.R. § 214.2(r)(2). A "religious vocation" is defined as "a calling to religious life evidenced by the demonstration of commitment practiced

in the religious denomination, such as the taking of vows. Examples of persons with a religious vocation include, but are not limited to, nuns, monks, and religious brothers and sisters." 8 C.F.R. § 214.2(r)(2). In addition, 22 C.F.R. § 41.58, n. 8.3 recognizes the Christian Science church as a religious denomination and recognizes Christian Science nurses as "ministers of religion."

§ 1101(a)(27)(C)(iii).   In the statutory provisions applicable to R–1 temporary visas, this prior experience requirement is nowhere to be found—but it is introduced, in a form that renders the statutes seemingly almost identical, through the regulations.   Congress passed the statutes at the same time, and it clearly distinguished between the two statutes when it included the prior experience requirement in one and not in the other. The Court therefore finds that the INS's interpretation of the statute to require strong proof that an R–1 visa applicant is "fully qualified," appears to run contrary to the clear language of the statute.[3]   Plaintiffs therefore stand a strong chance of succeeding on the merits in challenging the propriety of defendants' actions under the APA.[4]

### B.   *Irreparable Harm*

█   While plaintiff has shown a significant likelihood of success on the merits, it has not adequately shown that it will suffer irreparable harm absent a preliminary injunction. This, in itself, is sufficient to defeat plaintiff's request for a preliminary injunction.   *Magee v. Greenspan,* 808 F.Supp. 847, 851 (D.D.C. 1991).

█   Plaintiff argues that it will suffer irreparable harm because the INS's actions are "interfer[ing] with … long standing traditional religious practice."   Pl.'s Mot. for Prelim. Inj. at 15.   Plaintiff alleges that it is continually screening "church members from all over the world who are seeking acceptance as entry-level Christian Science nurses," and that the INS's apparent stance toward entry-level Christian Science nurses prohibits plaintiff from exercising its freedom of religion.   *Id.*   Plaintiff makes no statement, however, that any particular applicant aside from James Kihu has been or will be in the imminent future screened out from an R–1 visa.   (Kihu is apparently no longer at the Tenacre facility.)   To constitute irreparable harm, plaintiff's alleged injury must be "certain and great," not theoretical.   *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir. 1985); *Ashland Oil, Inc. v. FTC,* 409 F.Supp. 297, 307 (D.D.C.), *aff'd,* 548 F.2d 977 (D.C.Cir.1976).   Plaintiff's allegations of harm to their First Amendment right to the free exercise of the Christian Science religion are, at this juncture, only speculative, and the Court cannot find that irreparable harm exists here.[5]   Because plaintiff has failed to show that it will be irreparably harmed absent a preliminary injunction, despite the apparent strength of its case on the merits, preliminary relief cannot issue.[6]   Plaintiff's motion for preliminary injunction therefore is denied.

An appropriate Order accompanies this Opinion.

---

3.   Defendants maintain that plaintiff mischaracterizes their action on Tenacre's application for James Kihu as a "policy," when in fact no policy of denying visas to entry-level Christian Science nurses exists.   However, the case of James Kihu appears to the Court to be the quintessential test case for the regulations here, at least as respects Christian Science nurses (who, after all, are recognized as "ministers" by the INS).   Plaintiff attempted, as it at some point will again, to secure an R–1 visa for James Kihu so that he might continue his work at Tenacre.   Plaintiff attempted time and time again, through voluminous filings and documentation, to provide evidence to the INS that Kihu was a Christian Science nurse, not a "trainee" and not a "nurse's aide."   At this stage in the proceedings, of course, it is impossible to discern whether the policy plaintiff alleges exists is, in fact, a policy; but the Court fails to see how any other entry-level Christian Science nurse could hurdle the requirements currently in place, as the INS currently interprets them.

4.   This being the case, at this stage in the proceedings, the Court declines to reach the merits of the constitutional and RFRA issues presented by plaintiff.

5.   In addition, the Court notes that plaintiff waited seven months after receiving the denial notice from the AAU before filing suit, and plaintiff waited another month after filing suit to file a motion for preliminary injunction.   The Court recognizes that plaintiff was attempting to stave off litigation in this case by seeking further guidance from the INS General Counsel's Office during at least part of that interim time period, but the fact remains that the time lapse undermines any assertions that plaintiff will suffer irreparable harm if the Court does not grant preliminary injunctive relief.

6.   The Court therefore need not address the final two factors in a preliminary injunction determination (those of harm to the defendant and harm to the public interest), finding as it has that plaintiff will suffer no irreparable harm absent an injunction.

*ORDER*

This case comes before the Court on plaintiff's motion for a preliminary injunction. For the reasons set forth in the accompanying Opinion, the motion for preliminary injunction is hereby denied. Plaintiff shall have twenty days from the date of this Order to file its opposition to defendants' motion to dismiss or for summary judgment. Defendants shall have ten days from the date of plaintiff's opposition to file a reply.

SO ORDERED.